NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-3637-14T1

DUNBAR HOMES, INC.,

    Plaintiff-Respondent/
    Cross-Appellant,

v.

THE ZONING BOARD OF
ADJUSTMENT OF THE
TOWNSHIP OF FRANKLIN,

    Defendant-Respondent/
    Cross-Appellant,

and

TOWNSHIP OF FRANKLIN,

    Defendant-Appellant/
    Cross-Respondent.

_____

> **APPROVED FOR PUBLICATION**
>
> **February 14, 2017**
>
> **APPELLATE DIVISION**

Submitted June 7, 2016 — Decided  February 14, 2017

Before Judges Espinosa, Rothstadt and Currier.

On appeal from Superior Court of New Jersey,
Law Division, Somerset County, Docket No. L-
545-14.

Rainone Coughlin Minchello, LLC, attorneys for
appellant/cross-respondent (Louis N. Rainone,
of counsel; Jason D. Attwood, on the brief).

Kelso & Bradshaw, attorneys for respondent/
cross-appellant Zoning Board of Adjustment of
the Township of Franklin, join in the brief
of appellant/cross-respondent.

Hutt & Shimanowitz, P.C., attorneys for respondent/cross-appellant Dunbar Homes, Inc. (Ronald L. Shimanowitz, of counsel; Bryan D. Plocker, on the brief).

The opinion of the court was delivered by

ESPINOSA, J.A.D.

The "time of application rule" embodied in N.J.S.A. 40:55D-10.5 provides that regulations in effect "on the date of submission of an application for development" govern the review of that application. This marked a decisive shift from the "time of decision rule" previously applied by our courts, in which a land use decision was "based on the municipal ordinance as it existed at the time the application or appeal was being decided." Jai Sai Ram, LLC v. Planning/Zoning Bd. of the Borough of S. Toms River & Wawa, Inc., 446 N.J. Super. 338, 343 (App. Div.), certif. denied, ____ N.J. ____ (2016). Under the time of decision rule, a municipality was free to change its zoning ordinance during the pendency of a site plan application "even if the ordinance is amended in direct response to a particular application . . . as long as the amendment is consistent with the Municipal Land Use Law (MLUL)," N.J.S.A. 40:55D-1 to -163. Manalapan Realty, L.P. v. Twp. Comm. of the Twp. of Manalapan, 140 N.J. 366, 378-79 (1995). The stated purpose for the enactment of N.J.S.A. 40:55D-10.5 was to protect landowners and developers from the inequity that occurred when application and approval efforts and expenses

2

were rendered futile by subsequent changes to the ordinance.  See Jai Sai Ram, supra, 446 N.J. Super. at 343-44 (quoting Assemb. 437, 214th Leg., Req. Sess: (N.J. 2010) (Sponsor's Statement).

This appeal presents a question of first impression: when is a submission to the planning board an "application for development" that triggers the time of application rule.  Defendants Township of Franklin and the Zoning Board of Adjustment (collectively, the Township) argue the time of application statute does not apply until the application for development is complete.  Conversely, plaintiff Dunbar Homes, Inc. (Dunbar) argues "the submission of a substantial, bona-fide application which does not constitute a sham, and one which gives the Township sufficient notice of the application and an understanding of the development being proposed by the applicant, is sufficient" for the protection of the time of application statute.  We conclude that, although the submission need not be "deemed complete" pursuant to N.J.S.A. 40:55D-10.3, the plain language of relevant provisions of the MLUL requires a submission to include the "application form and all accompanying documents required by ordinance for approval" for the time of application rule to apply.  N.J.S.A. 40:55D-3.

Dunbar owns an existing garden apartment complex with 276 units in the Township's General Business (GB) zone.  Dunbar also owns 6.93 acres adjacent to this complex and planned to seek

3

approval for fifty-five additional apartments on that property. Without any change in the ordinance, Dunbar was required to seek a conditional use variance pursuant to N.J.S.A. 40:55D-70(d)(3) because the size of the property was less than the minimum ten acres required for garden apartments as a conditional use in that zone. What is at stake here is whether the (d)(3) variance still applies or whether plaintiff must satisfy the conditions for a (d)(1) variance, N.J.S.A. 40:55D-70(d)(1), as a result of a change in the ordinance that eliminated garden apartments as a conditional use in that zone.

I.

We begin with a review of the applicable statutory and ordinance provisions.

N.J.S.A. 40:55D-10.5 establishes the time of application rule:

> Notwithstanding any provision of law to the contrary, those development regulations which are in effect on the date of submission of an application for development shall govern the review of that application for development and any decision made with regard to that application for development. Any provisions of an ordinance, except those relating to health and public safety, that are adopted subsequent to the date of submission of an application for development, shall not be applicable to that application for development.
>
> [(Emphasis added).]

4

The triggering event for this statute is the submission of an application for development, which is defined in <u>N.J.S.A.</u> 40:55D-3 as:

> the <u>application form and all accompanying</u> <u>documents required by ordinance for approval</u> of a . . . site plan . . . conditional use, zoning variance or direction of the issuance of a permit . . . .
>
> [(Emphasis added).]

In pertinent part, the definition of "application for development" in the Zoning and Subdivision Ordinance of the Township of Franklin, (the Ordinance), <u>Franklin Township, N.J.,</u> <u>Code</u> ch. 112, art. I, § 4 (2016); tracks the MLUL definition:

> <u>An application form</u> completed as specified by this chapter and the rules and regulations of the board or agency before which the application is to be presented <u>and all</u> <u>accompanying documents, information and fees</u> <u>required by ordinance for approval</u> of the application for development, including where applicable, but not limited to, a site plan, . . . D Variance (use variance) . . .
>
> [(Emphasis added).]

The Ordinance then proceeds to include language similar to a different provision of the MLUL, <u>N.J.S.A.</u> 40:55D-10.3,[1] to define

---

[1] <u>N.J.S.A.</u> 40:55D-10.3 provides:

> An application for development shall be complete for purposes of commencing the applicable time period for action by a municipal agency, when so certified by the

5

when an application is "complete" for an explicit purpose, i.e., when "the time period for action by a municipal agency" commences:

> [T]he board or agency may require such additional information not specified in this chapter, or any revisions in the accompanying documents, as are reasonably necessary to make

municipal agency or its authorized committee or designee. In the event that the agency, committee or designee does not certify the application to be complete within 45 days of the date of its submission, the application shall be deemed complete upon the expiration of the 45-day period for purposes of commencing the applicable time period, unless: a. the application lacks information indicated on a checklist adopted by ordinance and provided to the applicant; and b. the municipal agency or its authorized committee or designee has notified the applicant, in writing, of the deficiencies in the application within 45 days of submission of the application. The applicant may request that one or more of the submission requirements be waived, in which event the agency or its authorized committee shall grant or deny the request within 45 days. Nothing herein shall be construed as diminishing the applicant's obligation to prove in the application process that he is entitled to approval of the application. The municipal agency may subsequently require correction of any information found to be in error and submission of additional information not specified in the ordinance or any revisions in the accompanying documents, as are reasonably necessary to make an informed decision as to whether the requirements necessary for approval of the application for development have been met. The application shall not be deemed incomplete for lack of any such additional information or any revisions in the accompanying documents so required by the municipal agency.

6

an informed decision as to whether the requirements necessary for approval of the application for development have been met. The application shall not be deemed incomplete for lack of such additional information or any revisions in the accompanying documents so required by the municipal board or agency. An application shall be <u>certified as complete</u> immediately upon the meeting of all requirements specified in the ordinance and in the rules and regulations of the municipal board or agency, and shall be deemed complete as of the day it is so certified by the administrative officer <u>for purposes of the commencement of the time period for action by the municipal agency</u>.

[<u>Franklin Township, N.J.</u>, <u>Code</u> ch. 112, art. I, § 4 (2016). (Emphasis added).]

The corresponding MLUL provision is unrelated to the time of application statute. <u>N.J.S.A.</u> 40:55D-10.3 was enacted to require a municipal agency "to <u>determine the completeness</u> of applications and to pass upon the merits of the various requests made within specific time periods." <u>Allied Realty v. Upper Saddle River</u>, 221 <u>N.J. Super.</u> 407, 417 (App. Div. 1987) (emphasis added), <u>certif. denied</u>, 110 <u>N.J.</u> 304 (1988). Once the application is deemed complete pursuant to this statute, the time period for action by the municipal agency begins to run, and, if that period ends without action taken, the application is subject to automatic statutory approval. <u>See</u>, <u>e.g.</u>, <u>N.J.S.A.</u> 40:55D-48(c) (automatic statutory preliminary approval); <u>N.J.S.A.</u> 40:55D-73 (automatic

7

statutory approval of application for development to the board of adjustment).

II.

On May 28, 2013, the Township introduced Franklin Township, N.J., Ordinance 4021-13, (July 16, 2013) to amend Schedule I of the Ordinance, to delete "garden apartment developments" from permitted conditional uses in the GB zone. The amending ordinance was adopted on July 16, 2013 and became effective August 5, 2013.

On the day before the amendment to the Ordinance was adopted, Dunbar filed a submission with the Planning Board seeking site plan approval and a (d)(3) conditional use variance for its proposed garden apartment project in the GB zone. The requirements applicable to Dunbar's application for site plan approval are set forth in § 112-192 of the Ordinance. Franklin Township, N.J., Code ch. 112, art. XXIII, § 192 (2016). Section 112-300 identifies the "information and documents" required for an application for any (d) variance. Franklin Township, N.J., Code ch. 112, art. XXXVI, § 300 (2016). Schedule 7 to the Ordinance establishes the schedule of fees for each type of application. Franklin Township, N.J., Code ch. 112, schedule 7 (2013).

Dunbar's submission included:

1.  Original and 20 copies of Application for Site Plan Approval

8

2. Original and 20 copies of Application for Use Variance

3. Original and one copy of Site Plan Checklist

4. Original and one copy of Use Variance Checklist

5. Check for $1,750.00 (Site Plan Application Fee)

6. Check for $625.00 (Use Variance Application Fee)

7. Check for $8,000 (Escrow Fee)

8. Twenty (20) sets of site plans

9. Twenty (20) sets of architectural plans

10. Three copies of Engineer's Report

11. Fifteen copies of Traffic Report

12. Fifteen copies of Environmental Impact Statement

13. Three copies of Somerset County Application, Checklist and transmittal letter dated July 15, 2013

14. Three copies of Somerset Union Soil Conservation District Application and transmittal letter dated July 15, 2013

15. Original and three copies of W-9 Form for [Dunbar]

16. Twenty (20) copies of certification of No Taxes Due

17. Twenty (20) copies of Disclosure of Ownership for Dunbar

9

A-3637-14T1

18. Twenty (20) copies of D & R Canal Commission Application and transmittal letter dated July 15, 2013.

In an email dated August 7, 2013, the day after the amendment to Schedule 1 to the Ordinance became effective, Senior Zoning Officer Vincent Dominach identified items "needed for completeness" of Dunbar's application. Three of the items identified by Dominach were necessary to satisfy the requirements established by § 112-300 of the Ordinance for an application for any (d) variance: "[f]our additional copies of the site plan application, use variance application, site plans set and architectural set," "3 copies of the drainage calculations," and "[c]opy of submittal letter to [Department of Transportation]." Dominach also identified items required by § 112-192 of the Ordinance for an application for site plan approval:

1. The key map must show zoning boundaries

2. The location map must show the zoning of all properties within 200 ft of the subject property

3. Copy of sealed survey of the subject property

4. Site plan must provide datum to which contour elevations refer

5. Site plan must indicate anticipated domestic water demand and amount of septic effluent

6. Site plan must indicate methods and placement of solid waste disposal facilities and screening thereof

10

7. Site plan must show existing and proposed topography.

Dominach also identified "W-9 form (filled out completely)" and additional fees[2] required by Schedule 7 of the Ordinance. Dominach advised further that, pursuant to the newly adopted ordinance, Dunbar was now required to seek a (d)(1) variance, N.J.S.A. 40:55D-70(d)(1), and not a (d)(3) variance because garden apartments were no longer permitted in the GB zone.

In its notice of appeal to the Zoning Board of Adjustment (the Board), Dunbar did not contend Dominach had erred by identifying items that were not required for the (d)(3) variance and site plan approval it sought. Instead, Dunbar argued only that because it submitted its application before the effective date of the amendment to the ordinance, only a (d)(3) variance was required.

After Dunbar submitted additional materials, Dominach advised the Board that Dunbar's "submittal met the definition of 'Application for Development'" and was "complete" as of October 29, 2013.

At the public hearing before the Board, the Township argued that, pursuant to § 112-4 of the Ordinance, an application for

_____

[2] The additional fees required were identified as "$4,125 ($75 per dwelling unit) if applying for preliminary approval only" and "$4,125 plus $750 (final fee) plus $2,200 ($40 per dwelling unit)" if Dunbar was "applying for preliminary and final approval."

11

development had to be "complete" for the time of application statute to apply. Dunbar presented expert testimony from John Chadwick, a professional planner, and Robert Washburn, a law professor with expertise in land use law.

Chadwick opined that, although Dunbar's July 15 submission failed to constitute a "complete" application for development under the Township's interpretation of § 112-4 of the Ordinance, it qualified as an application under the MLUL. Chadwick added that the inclusion of completeness to the definition of "application for development" in the Ordinance undermined the purpose of the time of application rule.

Washburn testified that the Legislature made an "application for development," and "not a complete application for development," the trigger for protection under the statute. He opined the time of application rule is "not subject to interpretation or modification by ordinance." He further explained that, due to the multiplicity of "extremely extensive completeness checklist[s]" in various municipalities, a completeness requirement would frustrate the purpose of the statute. He concluded § 112-4's definition of "application for development" was "invalid" because it differs from the MLUL definition of application for development and appeared to require a finding of completeness by the Township.

12

The Board affirmed Dominach's decision by unanimous vote and adopted a resolution memorializing its approval of Dominach's determination that Dunbar's submission was not an application for development until October 29, 2013. As a result, Dunbar was required to obtain a (d)(1) use variance to comply with the ordinance as amended, effective August 5, 2013.

In its resolution, the Board relied upon Rumson Estates, Inc. v. Mayor & Council of Fair Haven, 177 N.J. 338 (2003), to support its conclusion that the MLUL did not preclude the Township from adopting a zoning ordinance that defined "application for development" differently from the definition in the MLUL because the MLUL definition was not a mandatory term. The Board stated it was "bound to apply the definition of an application for development" in the Ordinance, but that even under the MLUL definition, N.J.S.A. 40:55D-3, "Dunbar did not submit the required material until October 29, 2013."

Dunbar filed a complaint in lieu of prerogative writ against the Board and the Township. Following oral argument, the trial judge reversed the Board's resolution.

The trial judge found § 112-4 of the Ordinance did not require completeness for a submission to qualify as an application for development; that the Ordinance was consistent with the MLUL and that "the Board improperly interpreted its own ordinance as

13

requiring completeness." As a result, he concluded the Ordinance was not "arbitrary, capricious and unreasonable, or . . . null and void."

Despite his finding that a "complete application for development" was not required for the time of application statute to apply, the trial judge determined that the time of application statute and N.J.S.A. 40:55D-10.3 should be read in tandem. The judge reasoned that N.J.S.A. 40:55D-10.3 required the Township to adopt an ordinance establishing checklists. He found the Township had not done so and concluded some other means was needed to determine if a submission was sufficiently complete to satisfy the definition of an application for development. Recognizing the need to exclude "sham applications" and "applications that are half blank," the judge concluded the time of application rule should apply if "the applicant provide[s] enough information . . . so that a meaningful review of the application can commence . . . so that at least the township can get . . . started on engaging a meaningful review."

The court then reviewed each of the documents submitted by Dunbar in July 2013 to determine their sufficiency and concluded "there was enough submitted to functionally begin a review" of Dunbar's submission on July 15, 2013. The judge entered an order that reversed the Board's denial of Dunbar's "right to proceed

14

under the prior conditional use provisions for Garden Apartments." The Township's motion for reconsideration was denied.

The Township appeals from the trial court's reversal of the Board's resolution. The Township argues the trial court erred in applying the time of application rule to a submission that failed to include all documents required by municipal ordinance. The Township argues further that the trial court erred in imposing the checklist requirements of N.J.S.A. 40:55D-10.3 upon the definition of "application for development" and in concluding that the Ordinance did not contain such a checklist. In its cross-appeal, Dunbar argues the trial court's decision that the Board's action was arbitrary, capricious or unreasonable should be affirmed; that the time of application statute does not require an application for development to be deemed complete; and that the Ordinance's definition of "application for development" is invalid and ultra vires because its effect is to eviscerate a mandatory provision of the MLUL. We conclude the Board's decision that the time of application statute was not triggered here was not arbitrary, capricious or unreasonable, albeit for reasons different from those relied upon by the Board.

### III.

In reviewing a local zoning decision, we "determine whether the Board followed statutory guidelines and properly exercised its

15

discretion." CBS Outdoor, Inc. v. Borough of Lebanon Planning Bd./Bd. of Adjustment, 414 N.J. Super. 563, 578 (App. Div. 2010). The zoning board's determination will be set aside "only when it is arbitrary, capricious or unreasonable," Kramer v. Bd. of Adjustment, Sea Girt, 45 N.J. 268, 296 (1965), and will not be disturbed in the absence of a "clear abuse of discretion." CBS, supra, 414 N.J. Super. at 577 (quoting Kramer, supra, 45 N.J. at 296-97). The same standard of review applies to our review of a trial court's decision on appeal from such a determination. See D. Lobi Enters. v. Planning/Zoning Bd. of Borough of Sea Bright, 408 N.J. Super. 345, 360 (App. Div. 2009); N.Y. SMSA, L.P. v. Bd. of Adjustment of Twp. of Weehawken, 370 N.J. Super. 319, 331 (App. Div. 2004).

"Although a municipality's informal interpretation of an ordinance is entitled to deference . . . the meaning of an ordinance's language is a question of law that we review de novo." Bubis v. Kassin, 184 N.J. 612, 627 (2005). Similarly, the trial judge's determination as to the meaning of the ordinance is not entitled to any deference in our analysis. Mountain Hill, L.L.C. v. Zoning Bd. of Adjustment of Twp. of Middletown, 403 N.J. Super. 210, 234 (App. Div. 2008), certif. denied, 197 N.J. 475 (2009).

When interpreting a statute, the goal "is to ascertain and effectuate the Legislature's intent." Cashin v. Bello, 223 N.J.

16

328, 335 (2015). When the plain language of a statute is clear on its face, "the sole function of the courts is to enforce it according to its terms." Ibid. (citation omitted). If the statute "'is subject to varying plausible interpretations,' or when literal interpretation of the statute would lead to a result that is inherently absurd or at odds with either public policy or the overarching statutory scheme of which it is a part," we "may consider extrinsic sources, including 'legislative history, committee reports, and contemporaneous construction.'" Id. at 335-36 (citation omitted).

                              IV.

The protection afforded by N.J.S.A. 40:55D-10.5 is triggered by the "submission of an application for development." It is beyond cavil that a submission for an "application for development" as used in N.J.S.A. 40:55D-10.5 need not be a "complete" application.

On its face, the statute does not require a "complete" application, a fact confirmed by the MLUL's definition of "application for development," N.J.S.A. 40:55D-3. Even if it were necessary to explore extrinsic evidence to interpret this language, the legislative history offers compelling evidence that the Legislature considered and rejected requiring a complete application for the time of application statute to apply.

17

As originally proposed, N.J.S.A. 40:55D-10.5 stated:

> Notwithstanding any provision of law to the contrary, whenever an application for development fully conforms with the development regulations which are in effect at the time that an application for development is deemed complete, those development regulations shall govern review of that application."
>
> [S. 2118, 211th Leg. (N.J. 2004) (emphasis added).]

The proposed language in the 2005-06, 2008-09 and 2009-10 Legislative sessions removed "deemed complete," and instead used language identical to the provision adopted in 2010. See S. 457, 212th Leg. (N.J. 2006); S. 58, 213th Leg. (N.J. 2008); S. 82, 214th Leg. (N.J. 2010).

This omission stands in contrast to other provisions of the MLUL in which the Legislature elected to modify the term "application for development" with "complete" and "deemed complete." See e.g., N.J.S.A. 40:55D-10.3; N.J.S.A. 40:55D-73 (time period in which a Board of Adjustment must render a decision begins to run with "the submission of a complete application for development") (emphasis added); N.J.S.A. 40:55D-110 (applications for development to the historic preservation commission will not be transferred until "deemed complete") (emphasis added). This presents an instance where "the Legislature expressly include[d] a requirement in one subsection and exclude[d] that same

18

requirement in other subsections of the same general statute," and so, "complete" should not be implied in N.J.S.A. 40:55D-10.5. In re Freshwater Wetlands Prot. Act Rules, 180 N.J. 478, 492 (2004) (citing Higgins v. Pascack Valley Hosp., 158 N.J. 404, 419 (1999)).

V.

Notwithstanding the clear import of the MLUL definition of "application for development" in this context, the Township argues that the MLUL definition is not mandatory and that the Ordinance requires a "complete" application for development. We disagree with each of these arguments.

A.

The authority of a public entity to plan and zone is a delegation of the police power vested in the Legislature by the New Jersey Constitution. Griepenburg v. Twp. of Ocean, 220 N.J. 239, 252 (2015) (citing N.J. Const. art. 4, § 6, ¶ 2). "The MLUL was intended to simplify, expedite and standardize procedures for approval by local boards, limit the potential for harassment of applicants, and bring consistency, statewide uniformity, and predictability to the approval process." N.Y. SMSA, supra, 382 N.J. Super. at 550; see also Rumson Estates, supra, 177 N.J. at 349 (describing the MLUL as "a comprehensive statute that allows municipalities to adopt ordinances to regulate land development . . . using uniform and efficient procedures").

19

"Because the planning and zoning power stems from legislative allowance, it must be exercised in strict conformity with the delegating enactment -- the MLUL." Nuckel v. Borough of Little Ferry Planning Bd., 208 N.J. 95, 101 (2011). See also Riggs v. Twp. of Long Beach, 109 N.J. 601, 610 (1988) ("Municipalities do not possess the inherent power to zone, and they possess that power, which is an exercise of the police power, only insofar as it is delegated to them by the Legislature.").

N.J.S.A. 40:55D-3 provides definitions that apply "[f]or the purposes of this act, unless the context clearly indicates a different meaning." "In other words, when a defined term is used in the MLUL, it will have a specified meaning." Rumson Estates, supra, 177 N.J. at 354.

The Township's reliance upon Rumson Estates to support its argument that it may alter the definition of "application of development" is misplaced. As to whether an MLUL definition set forth in N.J.S.A. 40:55D-3 to -7, is mandatory, the Court stated, "The term 'shall' indicates a 'mandatory requirement' and the term 'may' indicates a 'permissive action.'" Id. at 352. Thus, in considering whether an ordinance that altered the MLUL definition of "lot" and "floor area ratio" was valid, the Court found the alteration authorized by the MLUL, citing N.J.S.A. 40:55D-65(b) ("A zoning ordinance may . . . specify floor area ratios and other

20

ratios and regulatory techniques governing the intensity of land use . . . .") (emphasis added).  Id. at 351-52.

The interpretation of the Ordinance proposed by the Township is not authorized by any "permissive" provision of the MLUL and fails to advance any of the enumerated goals of the MLUL, N.J.S.A. 40:55D-2.  See id. at 350 ("It is basic that every zoning ordinance must advance one of those goals.").  To the contrary, the potential proliferation of disparate definitions of "application for development" that differ from N.J.S.A. 40:55D-3 compromises the ability of the MLUL to establish "uniform and efficient procedures."  Id. at 349.

We therefore hold that the MLUL definition for "application for development," N.J.S.A. 40:55D-3, is mandatory in construing the time of application rule.

B.

The Ordinance enjoys a presumption of validity.  Rumson Estates, supra, 177 N.J. at 350-51.  Applying established rules of statutory construction, Twp. of Pennsauken v. Schad, 160 N.J. 156, 170 (1999), we focus on the plain language of the statute and use common sense "to effectuate the legislative purpose," Morristown Assocs. v. Grant Oil Co., 220 N.J. 360, 380 (2015); see also In re J.S., 444 N.J. Super. 303, 308 (App. Div.), certif. denied, 225 N.J. 339 (2016).

21

Having determined the MLUL's definition of "application for development" is a mandatory term, we apply common sense to our interpretation of the Ordinance and conclude that any ambiguity in the Ordinance is merely a function of the fact that the Ordinance seeks to implement two unrelated provisions of the MLUL.

The first part of the Ordinance definition tracks the language of the MLUL definition for application of development. The Ordinance then incorporates language to define when an application is complete "for purposes of the commencement of the time period for action by the municipal agency." Franklin Township, N.J. Code ch. 112, art. I, § 4 (2016). This language codifies the standard established in N.J.S.A. 40:55D-10.3, a statute designed to implement an entirely different legislative objective.

Stated simply, while N.J.S.A. 40:55D-10.5 protects an applicant from adverse action taken by a municipal agency after an application is submitted, N.J.S.A. 40:55D-10.3 protects an applicant from the municipal agency's inaction after the application is submitted. N.J.S.A. 40:55D-10.3 does so by defining when the clock starts ticking for automatic approval provisions. See Allied Realty, supra, 221 N.J. Super. at 418 ("The evil which the automatic approval provisions were designed to remedy was municipal inaction and inattention."); Fallone Prop., supra, 369

22

N.J. Super. at 569 ("The purpose of these time limits is to expedite decision making on land use applications.").[3]

N.J.S.A. 40:55D-10.3 explicitly limits the application of the "complete" standard to this purpose, stating, "[a]n application for development shall be complete for purposes of commencing the applicable time period for action by a municipal agency . . . ." The Ordinance similarly states an application "shall be . . . complete . . . for purposes of the commencement of the time period for action by the municipal agency." Franklin Townshp, N.J., Code ch. 112, art I, § 4 (2016). The language and objective served by the time of application statute plainly fall outside the purpose for defining the start of a time period that ends in the automatic approval of an application.

Although the language relating to the two MLUL provisions is included in one section of the Ordinance, viewing the two portions as separate rather than interdependent effectuates the underlying purpose for each without impairing the ability of either to implement its purpose. On the other hand, an interpretation that

---

[3] The importance of requiring an application be certified as complete or deemed complete under N.J.S.A. 40:55D-10.3 is evident. Since "[a]n incomplete application is not entitled to any consideration on the merits," the automatic approval of an arguably incomplete application would do nothing to expedite decision-making but would needlessly preclude the municipal agency from performing its function. Eastampton Ctr. LLC v. Planning Bd. of Twp. of Eastampton, 354 N.J. Super. 171, 195-96 (App. Div. 2002).

the language regarding a "complete" application modified the definition of "application for development" would render the Ordinance invalid as contrary to a mandatory MLUL definition. Because we are charged to discern an interpretation that is consistent with validity if possible, Manalapan Realty, supra, 140 N.J. at 385, we conclude the two sections of the Ordinance are properly viewed as separate provisions that do not modify each other. See also Franklin Township, N.J. Code ch. 1, art. IV, § 16 (2016) ("[T]he holding of any section or part thereof to be . . . void or ineffective for any cause shall not be deemed to affect the validity . . . of any other sections or parts thereof.").

C.

The remaining issue is what standard a submission must meet to constitute an "application for development" protected by the time of application statute.

The trial judge proposed a standard that would be satisfied when the applicant provided enough materials to allow the municipal agency to "commence" a meaningful review. He then reviewed each of the twelve deficiencies identified by Dominach to determine whether they would have substantively impacted Dominach's review of the submission. The court held: (1) twenty copies of the survey was sufficient to facilitate review; (2) the $10,000 fee was

24

sufficient to commence review despite the significant additional fees that could attach; (3) the incomplete W-9 did not "seem to be of any great consequence"; (4) the application included sufficient data and information regarding drainage to "begin review of what drainage might be . . . even though it couldn't be completed necessarily"; (5) the key map and location map were "technical details" that really would not affect review of an application; (6) the effluent and solid waste disposal information although not demarcated on the site plan was set forth in the engineering report; and (7) the failure to forward the letter to the Department of Transportation would not "seriously interfere with . . . beginning the review of an application."  The trial court held that despite the deficiencies in Dunbar's application, Dominach was able to "functionally begin a review" on the date of submission.

We decline to adopt this approach.

A fundamental principle of land use law is that municipal authorities are granted "wide latitude in the exercise of the discretion" in recognition of "their peculiar knowledge of local conditions."  Burbridge v. Mine Hill, 117 N.J. 376, 385 (1990) (citation omitted).  The role of a reviewing court is to determine whether the exercise of that discretion was valid or "arbitrary, capricious or unreasonable."  C.B.S. Outdoor, supra, 414 N.J.

25

Super. at 577 (quoting Kramer, supra, 45 N.J. at 296). It is not within the reviewing "court's mandate to substitute [its] judgment for the proper exercise of the Board's discretion." Id. at 577-78; see also Fallone Prop., supra, 369 N.J. Super. at 561 (citation omitted) ("[A] reviewing court is not to 'suggest a decision that may be better than the one made by the board of adjustment or planning board, but to determine whether the board could reasonably have reached its decision.'").

The task assumed by the trial judge here unjustifiably and unnecessarily invaded the province of the municipal authority to make the preliminary assessment as to whether the items required by §§ 112-192 and -300 of the Ordinance for site plan approval and a (d)(3) variance had been submitted in support of Dunbar's application.[4] Further, the standard he used for making that determination, "enough information . . . so that at least the township can get . . . started on engaging a meaningful review," is fatally imprecise. Such a standard has the capacity to frustrate the Legislature's intent that the MLUL "bring consistency, statewide uniformity, and predictability to the approval process." N.Y. SMSA, supra, 382 N.J. Super. at 550.

---

[4] In light of our decision that N.J.S.A. 40:55D-10.5 and N.J.S.A. 40:55D-10.3 are not to be read in tandem, we need not consider whether §§ 112-192 and -300 of the Ordinance constitute "checklists" under N.J.S.A. 40:55D-10.3.

26

In our view, N.J.S.A. 40:55D-3 provides sufficient guidance for the determination whether a submission should be afforded the protection of the time of application statute:

> the <u>application form and all accompanying documents required by ordinance for approval</u> of a . . . site plan . . . conditional use, zoning variance or direction of the issuance of a permit . . . .
>
> [(Emphasis added).]

The documents that are necessary to satisfy this standard are dictated by the nature of the application(s) sought and the requirements for such application in effect at the time the submission is made. For example, if an applicant sought a (d)(3) variance as Dunbar did, the applicant was bound to submit all the documents identified in the Ordinance that governed applications for any (d) variance. Although the Ordinance reserved the right of the board to require additional information, it is clear the need for additional submissions would not prove fatal to the submission as an "application for development." Even when an application is required to be deemed complete for the purpose identified in N.J.S.A. 40:55D-10.3, "[t]he application shall not be deemed incomplete for lack of any such additional information or any revisions in the accompanying documents so required by the municipal agency." Ibid. The benchmark for determining whether documents are required for the submission to constitute an

27

application for development, N.J.S.A. 40:55D-3, is whether they are specifically required by ordinance.

In the first instance, the responsible municipal official determines whether the requirements of an ordinance have been satisfied. This determination rests upon a quantitative rather than a qualitative analysis. For example, in this case, documents explicitly required by the Ordinance, such as a letter to the Department of Transportation, and information similarly required, such as "datum to which contour elevations refer" on the site plan application, were missing from the application. Because any requirement deemed unsatisfied must be specifically required by ordinance, this affords applicants a measure of predictability and precludes an adverse determination based upon frivolous discrepancies.[5] The municipal official's decision that the

---

[5] See Cox & Koenig, N.J. Zoning & Land Use Administration, § 14-1.1 at 292 (2016), providing examples of decisions that found applications incomplete on frivolous grounds:

> [A]pplications which were accompanied by . . . a site plan or subdivision map as required by the ordinance, would nevertheless be found to be incomplete because the north arrow was inadvertently omitted from the map, because insufficient signature lines had been provided or because the environmental impact statement filed with the application was deemed to be insufficient.

submission falls short of an "application for development," as defined in N.J.S.A. 40:55D-3, remains subject to review, using the arbitrary, capricious or unreasonable standard.

Turning to the facts of this case, it is undisputed that Dunbar's submission failed to include documents required by §§ 112-192 and -300 of the Ordinance as well as a portion of the fees that were required when it submitted its applications for site plan approval and a (d)(3) variance. The determination that these omissions constituted deficiencies required no subjective evaluation of the contents of the documents submitted. It was, therefore, not an abuse of discretion for Dominach to find the application deficient.

Because we review judgments and not reasoning, Do-Wop Corp. v. City of Rahway, 168 N.J. 191, 199 (2001), the fact that the Board erred in concluding it was entitled to alter the MLUL's definition of "application for development" and adopted a definition that required completeness is not fatal to finding its conclusion should be affirmed. It is undisputed that Dunbar's July submission did not include all the documents required by ordinance at the time it was filed. The documents necessary to satisfy the MLUL definition of "application for development" were not submitted until after the amendment to the Ordinance became effective. Therefore, the Board's conclusion that Dunbar was not

29

entitled to the benefit of the time of application statute was not arbitrary, capricious or unreasonable and the trial court erred in reversing that determination.

Reversed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3637-14T1