**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1388-17T1

A-Z VENUE MANAGEMENT, LLC,
and ZACHARY LUBCHANSKY,

     Plaintiffs-Respondents,

v.

ZONING BOARD OF ADJUSTMENT
OF THE TOWNSHIP OF WEST
AMWELL and THE TOWNSHIP
OF WEST AMWELL,

     Defendants-Appellants.

_____

Argued January 8, 2019 – Decided July 15, 2019

Before Judges Accurso and Vernoia.

On appeal from the Superior Court of New Jersey, Law Division, Hunterdon County, Docket No. L-0060-17.

John R. Lanza and Stewart P. Palilonis argued the cause for appellants (Lanza & Lanza, LLP, attorneys for appellant Township of West Amwell; Stewart P. Palilonis, attorney for appellant Zoning Board of Adjustment of the Township of West Amwell; John R. Lanza and Stewart P. Palilonis, on the joint briefs).

Arnold C. Lakind argued the cause for respondents (Szaferman Lakind Blumstein & Blader PC, attorneys; Arnold C. Lakind, of counsel and on the brief).

PER CURIAM

In this zoning dispute, defendants Zoning Board of Adjustment of the Township of West Amwell (the Board) and the Township of West Amwell (the Township) appeal from the Law Division's October 20, 2017 order reversing the Board's denial of plaintiffs A-Z Venue Management, LLC, and Zachary Lubchansky's conditional use application. We affirm.

I.

At issue in this case is whether plaintiffs' proposed use of a property satisfies certain criteria embodied in two municipal ordinances. Plaintiffs are the contract purchasers of Brook Mill Farm (the property).[1] The property is approximately 13.8 acres and contains several buildings, including a main estate house, a "cottage house," a barn, a garage, a tennis court, a gazebo, and an in-ground pool. The Alexauken Creek, a stream protected by the New Jersey Department of Environmental Protection, bisects the property. The property is situated in an RR-5 (Residential Rural) Zone.

---

[1] Lubchansky testified before the Board that the contract to purchase the property is contingent on the approval of the conditional use.

The property's seller rented it semi-annually for weddings and family reunions, and plaintiffs intend to continue to use the property as a reception venue. Plaintiffs contacted the Township in March 2015 to confirm that this proposed use was acceptable. Plaintiffs received no written response from the Township, but conversations with a Township official left plaintiffs with the impression that their proposed use was permitted. Plaintiffs thereafter began to host receptions on the property.

In April 2016, plaintiffs received a letter from the Township stating that their operation of a "'Bed and Breakfast' or 'Assembly' use" was never approved by the Board, and that without such approval, plaintiffs' use violated the municipal code. The letter stated that plaintiffs could seek a conditional use approval from the Board to continue their use of the property as a reception venue.

Plaintiffs sought approval for their proposed use as an "assembly use," a conditional use for property in RR-5 zones. "Assembly" is defined by Township of West Amwell, N.J., Land Development Ordinance 109-4 (Nov. 18, 2015) (hereinafter Ordinance 109-4) as:

> A use which is a permanent facility, building, structure, or installation which is providing for civic, educational, political, religious or social assemblage purposes. This term shall include nonprofit or for-

3

profit facilities and shall include, but may not be limited to, houses of worship, banquet facilities, lodges, fraternal organizations, civic organizations and funeral homes.

Further, Township of West Amwell Land Development Ordinance 109-104 (Nov. 18, 2015) (hereinafter Ordinance 109-104) mandates that "[p]laces of assembly . . . shall adhere to the following" conditional use requirements:

A. The minimum lot size shall be five acres, at least four of which shall be buildable.

B. Principal or accessory buildings shall be located no less than [seventy-five] feet from any front, side or rear property line or within the building setbacks for the zoning district, whichever is greater.

C. Maximum lot coverage shall be [thirty-five percent].

In May 2016, plaintiffs filed a bifurcated "Application Form for a Variance/Appeal/Interpretation" seeking "[p]ermitted use as [a]ssembly [u]se."[2] See N.J.S.A. 40:55D-76(b). The Board held three hearings on the application.

---

[2] In September 2016, the Township entered into a Consent Interim Agreement with plaintiffs and the property's owner that the Chancery Division entered as a final consent order on October 25, 2016. In pertinent part, the consent order allowed plaintiffs to host "weddings and special events" at the property until October 31, 2016, after which plaintiffs would require "zoning or [c]ourt approval."

Plaintiffs argued the property qualified for use as a "banquet facilit[y]" within the meaning of Ordinance 109-4. Plaintiffs described that wedding receptions and reunions were held under a tent temporarily erected over a tennis court. Plaintiffs asserted that, collectively, "the whole facility" constituted "a permanent structure" because even though the banquets held on the property primarily took place under the tent on the tennis court, "there are other locations that could be used for a banquet." Plaintiffs rent out both homes on the property when a reception is held, noting that the "main estate house" is "especially suitable for a bridal suite," and that the wedding party will reside in the homes "during the events." However, plaintiffs clarified that the "homes are strictly for the guests staying in them," the bathrooms and kitchens in both homes are not used during receptions, and caterers and portable bathroom facilities are brought onto the property to accommodate receptions. Plaintiffs' expert witness, James Miller, a certified planner, testified that he believed the tennis court on the property constituted a "structure," and that although the receptions "primarily" take place on the tennis court, he believed the "whole facility is a permanent structure."

Additionally, plaintiffs argued that the property met Ordinance 109-104's conditional use requirements because the evidence showed the property

contains 5.6 "buildable" acres, the largest contiguous tract of which is 3.7 acres. Plaintiffs acknowledged that a pool deck, barn, and gazebo violated Ordinance 109-104(B)'s seventy-five-foot setback requirement, but agreed to remove them in order to comply with the ordinance.[3] Additionally, plaintiffs presented evidence showing that the property's lot coverage was six percent, well within Ordinance 109-104(C)'s thirty-five percent limit.

The Township opposed plaintiffs' application, arguing that Ordinance 109-4 required the "assembly" use be contained within a permanent building or permanent structure. The Township argued that because the assembly took place under a tent temporarily erected over the tennis court, plaintiffs failed to show the use would be contained within a permanent building or permanent structure. The Township also argued plaintiffs' proposed use violated Ordinance 109-104(A) because the ordinance required four contiguous "buildable" acres, and the property's largest contiguous tract of "buildable" acreage was only 3.18 acres.

Alternatively, plaintiffs argued that if the Board adopted the Township's interpretation of Ordinance 109-104, they had presented evidence establishing

---

[3] As plaintiffs agreed to remove these offending features, plaintiffs' compliance with Ordinance 109-104(B) is not an issue in this appeal.

an entitlement to a conditional use variance. See N.J.S.A. 40:55D-70(d)(3). Russell Smith, plaintiffs' engineering and planning expert, testified that granting plaintiffs a variance from Ordinance 109-104(A)'s buildable area requirement would have no impact on the surrounding properties. He testified that plaintiffs did not plan to build any new buildings or structures on the property, and that there was ample space for reception attendees throughout the property. The Township, however, argued plaintiffs should not be granted a conditional use variance because the noise generated from plaintiffs' events was detrimental to the neighboring residences. Several members of the public appeared in opposition to plaintiffs' application and voiced displeasure with the noise created by plaintiffs' events.

The Board denied plaintiffs' application. The Board interpreted Ordinance 109-4 to require "a permanent structure in which the assembly occurs." Based on this interpretation, the Board determined that the tent that is attached to the tennis court during a reception did not constitute a permanent structure and did not properly contain the use. Further, the Board found that "without the tent, which is not a permanent [structure], [the property] wouldn't be suitable for assembly." The Board determined that although there were other permanent buildings on the property, such as the main estate house and

A-1388-17T1

the cottage house, the testimony established that "none of those structures were good uses for assembly" or that "there could be an assembly in those buildings." The Board rejected plaintiffs' position that the entire property constituted a "facility" within the meaning of Ordinance 109-4: plaintiffs' evidence showed the assemblies were not held in the buildings and plaintiffs required the assistance of third-party vendors to provide food, seating, and bathroom facilities during the receptions. The Board concluded that "all of the buildings together as a collective . . . don't support . . . any assembly use," and determined plaintiffs failed to establish their use of the property qualified as an "assembly" use.

The Board also found the property failed to satisfy Ordinance 109-104's conditional use requirements. The Board interpreted Ordinance 109-104(A) to require that the assembly use take place within four contiguous buildable acres, and plaintiffs' evidence showed the property's largest contiguous tract of buildable land is only 3.7 acres. Additionally, the Board found that plaintiffs could not be granted a conditional use variance because the noise generated by plaintiffs' use was detrimental to the surrounding area.

Plaintiffs filed a complaint in lieu of prerogative writs, claiming the Board "incorrectly interpreted the criteria to be used to determine if a use is an

'assembly use'" under Ordinance 109-4,[4] as well as "improperly determined" that Ordinance 109-104(A) required four contiguous buildable acres.[5] Plaintiffs argued in the alternative that if the court adopted defendants' interpretation of Ordinance 109-104 as requiring four contiguous buildable acres, then the Board also erred by denying plaintiffs a conditional use variance based on irrelevant and inappropriate criteria. See N.J.S.A. 40:55D-70(d)(3).

The court heard argument and rendered an oral decision reversing the Board's determination. The court interpreted "assembly" under Ordinance 109-4 to require only a permanent facility, and found the term "permanent" did not modify the words "building, structure, or installation." However, the court noted that even if the word "permanent" modified "facility, building, structure,

---

[4]   Plaintiffs conceded before the Board that if their use did not satisfy Ordinance 109-4's definition of "assembly," they would have difficulty proving the necessary criteria to be granted a use variance pursuant to N.J.S.A. 40:55D-70(d)(1).

[5]   Plaintiffs also asserted that defendants were equitably estopped from proscribing the intended use of the property because the Township had been on notice of the use. The court did not decide the matter on this issue, and neither party has addressed the issue on appeal. We therefore deem the argument waived. See Jefferson Loan Co. v. Session, 397 N.J. Super. 520, 525 n.4 (App. Div. 2008) (finding an issue not briefed on appeal is deemed waived); see also Pressler & Verniero, Current N.J. Court Rules, cmt. 5 on R. 2:6-2 (2019).

[and] installation," it was "satisfied that this proposed use here, banquet facility, is conducted in large part in or on permanent structures, including the main estate house, the cottage, [and] the tennis court itself where the tent is constructed."

The court refused to adopt defendants' interpretation of Ordinance 109-4 requiring that the permanent structure "contain" or "house" the use. The court determined the Board's interpretation was "reading language into the ordinance" that "is just not there," and found that "the fact that the main reception occurs . . . in a tent . . . is [not] enough to . . . declare that this proposed use does not meet the definition of an . . . assembly use." Instead, the court interpreted "facility" as "[s]omething designed, built or installed to afford a specific convenience or service," and found that "even though the main use . . . might take place in a tent . . . the tennis court surface itself is a structure of sorts, a facility." The court adopted plaintiffs' position, found that "the whole piece of property with all the things that were built on it meets the definition of a facility," and concluded that plaintiffs' use satisfied Ordinance 109-4.

The court also declined to adopt the Board's interpretation of Ordinance 109-104(A). Rather, it held the ordinance did not require a

contiguous tract of four "buildable" acres. Therefore, the court found plaintiffs' evidence that the property contained 5.6 non-contiguous "buildable" acres satisfied Ordinance 109-104(A). Based on its finding plaintiffs satisfied Ordinance 109-104's requirements, the court found it unnecessary to determine whether plaintiffs were entitled to a conditional use variance.

The court reversed the Board's determination, granted plaintiffs' application, issued an order memorializing its decision, and remanded the matter to "the [Board] and/or Planning Board[] for such further proceedings as may be required." This appeal followed.

Defendants submit the following arguments for our consideration:

POINT ONE

THE TRIAL COURT ERRED IN INTERPRETING THE ORDINANCE, AND THE INTERPRETATION OF THE ZONING BOARD OF ADJUSTMENT SHOULD BE GIVEN DEFERENCE.

POINT TWO

THE ZONING BOARD OF ADJUSTMENT WAS CORRECT IN DETERMINING THAT AN "ASSEMBLY USE" REQUIRES A PERMANENT BUILDING FOR HOUSING THE USE, AND THAT THE PROPERTY TO BE SUBJECTED TO SUCH A USE MUST HAVE AT LEAST FOUR CONTIGUOUS BUILDABLE ACRES.

11

POINT THREE

THE TRIAL COURT ERRED IN FAILING TO
ADDRESS THE NEGATIVE CRITERIA OF
RESPONDENTS' APPLICATION.

POINT FOUR

THE BOARD OF ADJUSTMENT WAS JUSTIFIED
IN REJECTING RESPONDENT[S'] CONDITIONAL
USE VARIANCE APPLICATION FOR A PLOT OF
LAND WITH LESS THAN FOUR CONTIGUOUS
BUILDABLE ACRES.

II.

A zoning board's decisions "enjoy a presumption of validity, and a court may not substitute its judgment for that of the board unless there has been a clear abuse of discretion." Price v. Himeji, LLC, 214 N.J. 263, 284 (2013). A zoning board abuses its discretion, for example, when its decision to grant or deny a conditional use application is premised upon the misinterpretation of a municipal ordinance. See Adams v. Delmonte, 309 N.J. Super. 572, 575 (App. Div. 1998) (holding the zoning board misinterpreted the applicable conditional use ordinance when the zoning board allowed the defendant to operate a septic tank cleaning business out of his home as a "home occupation"). "[T]he action of a board will not be overturned unless it is found to be arbitrary and capricious or unreasonable, with the burden of proof placed on the plaintiff

challenging the action." Grabowsky v. Township of Montclair, 221 N.J. 536, 551 (2015). "The same standard of review applies to our review of a trial court's decision on appeal from such a determination." Dunbar Homes, Inc. v. Zoning Bd. of Adjustment of Twp. of Franklin, 448 N.J. Super. 583, 595 (App. Div. 2017), aff'd 233 N.J. 546 (2018).

Defendants argue that the court misinterpreted Ordinance 109-4, and should have deferred to the Board's interpretation. "As with other legislative provisions, the meaning of an ordinance's language is a question of law that we review de novo." Bubis v. Kassin, 184 N.J. 612, 627 (2005). Although a zoning board's "informal interpretation of an ordinance is entitled to deference . . . that deference is not limitless." Mountain Hill, LLC v. Zoning Bd. of Adjustment of Twp. of Middletown, 403 N.J. Super. 210, 235 (App. Div. 2008) (quoting Bubis, 184 N.J. at 627). A trial judge's interpretation of a zoning ordinance is not entitled to deference. Dunbar Homes, 448 N.J. Super. at 595.

"The established rules of statutory construction govern the interpretation of a municipal ordinance. . . . Those principles require that an ordinance should be interpreted to 'effectuate the legislative intent in light of the language used and the objects sought to be achieved.'" Township of

13

Pennsauken v. Schad, 160 N.J. 156, 170 (1999) (quoting Merin v. Maglaki, 126 N.J. 430, 435 (1992)). The "first step of statutory construction requires an examination of the language of the ordinance." Ibid. In such an examination, "[w]e ascribe to the . . . words their ordinary meaning and significance," DiProspero v. Penn, 183 N.J. 477, 492 (2005), and "[t]he meaning derived from that language controls if it is clear and unambiguous," Schad, 160 N.J. at 170. Where the plain language "is susceptible to different interpretations, the court considers extrinsic factors, such as the statute's purpose, legislative history, and statutory context to ascertain the legislature's intent." Ibid.

Although zoning ordinances are generally to be "liberally construed in favor of the municipality," an ordinance must be "clear and unambiguous so that [persons] of ordinary intellect need not guess at [its] meaning." Id. at 171 (alterations in original) (citation omitted). Moreover, "limitations on the use of private property must be clearly and expressly imposed, and should not be inferred." Mountain Hill, 403 N.J. Super. at 236 (quoting Hrycenko v. Bd. of Adjustment, City of Elizabeth, 27 N.J. Super. 376, 379 (App. Div. 1953)).

Defendants first argue the court misinterpreted the definition of "assembly" because the adjective "permanent"[6] modifies the words "building, structure, or installation" in Ordinance 109-4. The court interpreted Ordinance 109-4's language to require only a "permanent facility," and held that a "building, structure, or installation" need not be permanent to be an "assembly" use.

Ordinance 109-4, which is not a model of clarity, defines "assembly" as "[a] use which is a permanent facility, building, structure, or installation" which provides for "assemblage purposes." We, however, agree with defendants that "permanent," as used in Ordinance 109-4, modifies "facility, building, structure, [and] installation." The series-qualifier canon, despite its "fancy name," Lockhart v. United States, 577 U.S. ___, 136 S. Ct. 958, 970 (2016) (Kagan, J., dissenting), provides that "when there is a straightforward, parallel construction that involves all nouns or verbs in a series, a

---

[6] "Permanent" is not defined in Ordinance 109-4. As "[t]he language of the ordinance 'should be given its ordinary meaning absent specific intent to the contrary,'" Heyert v. Taddese, 431 N.J. Super. 388, 424 (App. Div. 2013) (quoting Mortimer v. Bd. of Review, 99 N.J. 393, 398 (1985)), we hereinafter use the term "permanent" in accordance with its ordinary meaning as "continuing or enduring without fundamental or marked change," Merriam-Webster.com Dictionary, https://www.merriam-webster.com/dictionary/permanent (last visited June 19, 2019).

prepositive . . . modifier normally applies to the entire series," Black's Law Dictionary 1574 (10th ed. 2014). The canon will normally apply where "the nouns and verbs are listed without any intervening modifiers." United States ex rel. Vaughn v. United Biologics, LLC, 907 F.3d 187, 195 (5th Cir. 2018); cf. United States v. Loyd, 886 F.3d 686, 688 (8th Cir. 2018) (declining to interpret a statute using the series-qualifier canon where "the statute does not present . . . a single, uninterrupted series"). We apply the canon here. Ordinance 109-4's definition of "assembly" provides an uninterrupted series of nouns that are modified by the prepositive adjective "permanent," and are uninterrupted by an intervening modifier. Therefore, we hold that "assembly," as defined by Ordinance 109-4, requires that any qualifying facility, building, structure or installation be permanent.

Defendants next contend the court misinterpreted Ordinance 109-4 because it requires the use to be "contained within a permanent building," such that the building would "shield adjacent residential uses from the adverse impacts." Although such would certainly have been reasonable, defendants' interpretation of Ordinance 109-4 fails to find support in the ordinance's plain language. The ordinance states that a "permanent facility, building, structure, or installation" must "provid[e] for . . . assemblage purposes." It does not

require that the "facility, building, structure, or installation" "contain" or "house" the use, and "[w]e cannot 'write in an additional qualification which the Legislature pointedly omitted in drafting its own enactment.'" Mountain Hill, 403 N.J. Super. at 239 (alteration in original) (quoting DiProspero, 183 N.J. at 492).

Moreover, defendants' interpretation improperly imposes properties that typically characterize "building[s]" to the separately listed "facilit[ies]," "structure[s]," and "installation[s]," some of which are clearly not buildings. "It is a cardinal rule of statutory construction that full effect should be given, if possible, to every word of a statute." McCann v. Clerk of Jersey City, 167 N.J. 311, 321 (2001) (quoting Gabin v. Skyline Cabana Club, 54 N.J. 550, 555 (1969)). "Building," as defined by Ordinance 109-4, is "[a] combination of materials to form a construction adapted to a permanent, temporary or continuous occupancy and have a roof." "Structure" is also defined by Ordinance 109-4 as:

> Anything constructed or erected which requires permanent or temporary attachment to something which is erected on the ground and designed, intended or arranged for the housing, shelter, enclosure and/or structural support of persons, animals or property of any kind, excluding unroofed patios at ground level, parking lots or driveways, and fences in compliance with this chapter.

"Facility" and "installation" are not defined by Ordinance 109-4, and because "[t]he language of the ordinance 'should be given its ordinary meaning absent specific intent to the contrary,'" Heyert, 431 N.J. Super. at 424 (quoting Mortimer, 99 N.J. at 398), we therefore turn to the ordinary meanings of those terms. "Facility" is defined as "something . . . that is built, installed, or established to serve a particular purpose." Merriam-Webster.com Dictionary, https://www.merriam-webster.com/dictionary/facility (last visited June 18, 2019). "Installation" is defined as "something installed for use," Merriam-Webster.com Dictionary, https://www.merriam-webster.com/dictionary/installation (last visited June 18, 2019), and is synonymous with the term "center," defined as "a facility providing a place for a particular activity or service," Merriam-Webster.com Dictionary, https://www.merriam-webster.com/dictionary/center (last visited June 19, 2019).

Each of these terms have elements separate and distinct from one another; for example, a "building" requires a roof, an element not required to be present in a "facility," "structure," or "installation." Therefore, to give effect to each of the terms used in the ordinance, we find that facilities, structures, and installations are different from buildings and they neither

require roofs nor must they be "adapted to a permanent, temporary, or continuous occupancy." See McCann, 167 N.J. at 321 ("We cannot assume that the Legislature used meaningless language." (quoting Gabin, 54 N.J. at 555)). We therefore decline to adopt defendants' interpretation of Ordinance 109-4 that would require the assembly use to be "contained within a permanent building."

The parties do not argue that any building or installation on the property provides for the assembly use. The primary location for receptions on the property is the tennis court, which the court determined was a permanent facility within the meaning of Ordinance 109-4. We agree. Plaintiffs' evidence showed that when receptions are held at the property, a tent is erected over the tennis court, and the tennis court is then used as "a pad site" for reception attendees to gather, eat and dance. Plaintiffs have, through their proposed use of the property, "established" the tennis court "to serve a particular purpose": providing the property's banquet space. Facility, Merriam-Webster.com Dictionary, https://www.merriam-webster.com/dictionary/facility (last visited June 18, 2019). We further agree with the court that the tent which is temporarily erected over the tennis court does not detract from the tennis court's permanency as a facility: the tennis

court is the place where receptions are held and, as the evidence showed and as defendants' counsel candidly acknowledged at oral argument on this appeal, the tennis court is a permanent aspect of the property. The court's finding that the tennis court constitutes a permanent facility under Ordinance 109-4 is supported by the evidence.

Having determined the tennis court is a permanent facility within the meaning of Ordinance 109-4, we must also determine whether the court erred by finding the property also satisfied Ordinance 109-104(A)'s buildable acreage requirement. Defendants argue the court misinterpreted Ordinance 109-104(A), and contend Ordinance 109-104(A) requires that the property have four contiguous buildable acres.

We again consider the plain language of the ordinance. Schad, 160 N.J. at 170. Ordinance 109-104(A) requires that "[t]he minimum lot size" for a conditional assembly use "shall be five acres, at least four of which shall be buildable." The word "buildable" is not defined in the Township's ordinances. Ordinance 109-4, however, defines a "buildable area" as "the contiguous area of any lot exclusive of critical environmental areas." Defendants argue that Ordinance 109-104(A)'s use of the term "buildable" should be interpreted to incorporate the definition of "buildable area" in Ordinance 109-104(A) and, as

20

such, there is a requirement that plaintiffs' property have four contiguous buildable acres for an assembly use. Plaintiffs argue the exclusion of the entire phrase "buildable area" from Ordinance 109-104(A) means that there is no requirement that the four "buildable" acres be contiguous.

We find Ordinance 109-104(A) imposes no contiguity requirement. Ordinance 109-104(A) does not use the phrase "buildable area," or the term "contiguous." Defendants, in essence, request that we re-write Ordinance 109-104(A) to read "[t]he minimum lot size shall be five acres, at least four of which shall <u>constitute a buildable area</u>." (Emphasis added). Although the "general rule" of statutory interpretation is that "a word or phrase should have the same meaning throughout the statute in the absence of a clear indication to the contrary," <u>Perez v. Pantasote, Inc.</u>, 95 N.J. 105, 116 (1984), where the drafter "has 'pointedly omitted' a term from an enactment, we cannot presume to write that term" into the ordinance, <u>Verry v. Franklin Fire Dist. No. 1</u>, 230 N.J. 285, 298 (2017) (quoting <u>DiProspero</u>, 183 N.J. at 492). Ordinance 109-104(A) merely requires that four acres be "buildable," and does not otherwise require those four acres to be a contiguous, four-acre "buildable area." We decline to "write in an additional qualification" that was omitted, <u>Mountain</u>

21

, 403 N.J. Super. at 239 (quoting <u>DiProspero</u>, 183 N.J. at 492), and hold Ordinance 109-104(A) does not require four contiguous buildable acres.

Based on our interpretation of Ordinance 109-104(A), we affirm the court's order and hold the Board abused its discretion by denying plaintiffs' application for a conditional use approval. <u>See</u> <u>Adams</u>, 309 N.J. Super. at 575. The evidence before the Board showed that the property consisted of 5.6 "buildable" acres, satisfying Ordinance 109-104(A). It further showed that the property satisfied the maximum lot coverage requirement of Ordinance 109-104(C) and, as discussed above, the property's compliance with Ordinance 109-104(B)'s setback requirement was not an issue due to plaintiffs' agreement to remove the offending features. We need not address defendants' arguments regarding whether the property qualified for a conditional use variance because a conditional use variance is unnecessary.

Because we affirm the court's reversal of the Board's decision, we remand the matter to the Board for consideration of plaintiffs' site plan. <u>See</u> N.J.S.A. 40:55D-76(b). We do not agree with plaintiffs' representations that a site plan need not be submitted for the property. Township of West Amwell, N.J., Land Development Ordinance 109-214 (Dec. 28, 1990) requires

22

submission of a site plan in all matters except those situations specifically outlined in subsection (E), none of which apply here.

We affirm the court's October 20, 2017 order reversing the Board's denial of plaintiffs' conditional use application. We remand to the Board for consideration of plaintiffs' site plan, see N.J.S.A. 40:55D-76(b), and plaintiffs shall comply with the applicable requirements to obtain approval of a site plan before the Board.

Affirmed and remanded for consideration of plaintiff's site plan application. We do not retain jurisdiction.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION