DIVISION OF UNEMPLOYMENT AND DISABILITY INSURANCE IN THE DEPARTMENT OF LABOR AND INDUSTRY, APPELLANT, v. BOARD OF REVIEW, EASTERN AIRLINES, INC., AND ROCKY N. COVINO, RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued January 3, 1983—Decided January 26, 1983.

Before Judges BISCHOFF, J.H. COLEMAN and GAULKIN.

*Michael S. Bokar,* Deputy Attorney General, argued the cause for appellant (*Irwin I. Kimmelman,* Attorney General of New Jersey, attorney; *Michael S. Bokar,* of counsel, and on the brief).

No one argued the cause for respondents.

The opinion of the court was delivered by

J.H. COLEMAN, J.A.D.

This appeal raises the same question previously addressed in *Schatz v. Board of Review,* 177 *N.J.Super.* 246 (App.Div.1981), vis-a-vis how should unemployment compensation benefits be computed where successive employments are involved. For the reasons which follow, we disagree with the method of computing the weekly benefit rates approved in *Schatz.* Hence, we reverse the decision of the Board of Review which relied on *Schatz.*

The facts germane to our determination are not in dispute. Rocky N. Covino became unemployed on January 30, 1980. His most recent employment was with Eastern Airlines, Inc., from October 1, 1979 to January 29, 1980. He worked a period of 16 weeks, earning $2,266. He also worked for Sterns Department Store for a period of 35 weeks ending December 28, 1979, earning a total of $2,258. Additionally, he worked for Prudential Insurance Company of America from May 23, 1979 to August 31, 1979, earning $1,640 for 14 weeks. His claim for unemployment benefits was filed on February 1, 1980. His base year was January 21, 1979, through January 19, 1980.[1]

Since claimant was employed by three successive employers during the base year, we must, therefore, look to the statute to determine his benefit rate. Our analysis must begin with *N.J. S.A.* 43:21–3(c), which provides generally that the weekly benefit rate for a qualified claimant shall be two-thirds of his average weekly wage subject to other conditions that are not here pertinent.

The crux of this appeal centers around the method to be employed in computing the average weekly wage. *N.J.S.A.* 43:21–19(u) defines average weekly wage as

... the amount derived by dividing an individual's total wages received during his base year base weeks ... from that most recent year employer with whom he has established at least 20 base weeks, by the number of base weeks in which

---

[1]"Base year" is defined by *N.J.S.A.* 43:21–19(c) as "the 52 calendar weeks ending with the second week immediately preceding an individual's benefit year."

such wages were earned. In the event that such claimant had no employer in his base year with whom he had established at least 20 base weeks, then such individual's average weekly wage shall be computed as if all of his base week wages were received from one employer and as if all his base weeks of employment had been performed in the employ of one employer.

The local unemployment office and the Appeal Tribunal applied *N.J.S.A.* 43:21–19(u) literally. They determined that since the claimant's latest employment with Eastern Airlines from October 1, 1979 to January 29, 1980 lasted less than 20 base weeks,[2] the job with Sterns Department Store constituted the most recent employment during the base year in which the claimant had worked at least 20 base weeks. The claimant's average weekly wage at Sterns Department Store was determined to be $65.51, which yielded a weekly unemployment benefit rate of $44. On appeal to the Board of Review, the decision of the Appeals Tribunal was reluctantly reversed based on the holding in *Schatz.* The Board redetermined the benefit rate based on the claimant's 16-week employment with Eastern Airlines. The rate was determined to be $95 a week.

The Division of Unemployment and Disability Insurance (Division) has appealed, contending that the rate should be $44 rather than $95. The Board made it clear that it fixed the rate at $95 a week only because it was bound by the holding in *Schatz.*[3] The *Schatz* court imported the $2,200 minimum earnings provision from subsection 4(e) to subsection 19(u). In so doing it determined that an employee who cannot establish the 20 base weeks with the last employer in the base year, can nevertheless use the $2,200 minimum earning from that employer during the base year as an alternative method for computing

---

[2]"Base week" is defined by *N.J.S.A.* 43:21–19(u) as any calendar week in the base year in which the employee earns at least $30.

[3]While the Division contends that the $95 weekly rate paid the claimant was erroneous, counsel for appellant at oral argument assured us that the Director of the Division is unlikely to request a refund from the claimant pursuant to *Howard v. Board of Review,* 173 *N.J.Super.* 196 (App.Div.1980).

the average weekly wage. *N.J.S.A.* 43:21–4(e), in pertinent part, provides:

> (e) With respect to a base year . . . the individual has established at least 20 base weeks . . ., or, in the alternative, has earned $2,200.00 or more in the individual's base year, . . .

A determination of the correct weekly unemployment rate requires an examination of the legislative intent to ascertain whether the Legislature intended to import the minimum earning alternative found in *N.J.S.A.* 43:21–4(e) to the average weekly wage determination required by *N.J.S.A.* 43:21–19(u). In our endeavor to fathom the legislative intent, we must be guided by certain well delineated principles of statutory construction. Judge Fritz recently outlined our role in *MacMillan v. Taxation Div. Director,* 180 *N.J.Super.* 175 (App.Div.1981), aff'd o.b. 89 *N.J.* 216 (1982), in which he stated:

> But we remain judges and as such cannot succumb to the humanistic pressures or substitute our concern in place of the legislative design. Indeed, we may not even permit ourselves the luxury of liberal construction—or, as a matter of fact, any construction—if the words of the statute plainly convey the legislative intent, as we are persuaded they do here. We must enforce the legislative will as written. *Dacunzo v. Edgye,* 19 *N.J.* 443, 451 (1955). We certainly may not supply a provision no matter how confident we are of what the Legislature would do if it were to reconsider today. *Stamboulos v. McKee,* 134 *N.J.Super.* 567 (App.Div.1975). "Construing" or "interpreting" a clear and unambiguous statute is simply not permissible. [*Id.* at 177]

We must also be mindful that the interpretation by the agency administering the statute should be accorded great weight by the courts. *Peper v. Princeton Univ. Bd. of Trustees,* 77 *N.J.* 55, 69–70 (1978). *Self v. Board of Review,* 91 *N.J.* 453 (1982).

Our examination of the legislative history reveals that prior to amendments to the act adopted in 1967, both subsections 4(e) and 19(u) contained only base week minimum requirements—at that time 17 weeks. By virtue of *L.*1967, *c.* 30, an alternative minimum earnings provision in the amount of $1,350 was added to subsection 4(e). However, subsection 19(u) was not amended at that time. It was not until seven years later, in 1974, that subsection 4(e) was again amended to increase the

base week minimum to 20 weeks from 17 weeks and to increase the alternative monetary amount to $2,200 from $1,350. See *L.* 1974, *c.* 86, § 2. Subsection 19(u) was also amended at the same time to increase the base week minimum to 20 weeks. It is highly significant that despite the fact that subsections 4(e) and 19(u) were simultaneously amended in 1974, no monetary alternative was added to subsection 19(u). The subsequent amendments to these sections in 1977, *L.*1977, *c.* 307, and in later years made no changes that are here pertinent.

Subsection 4(e) is located in that part of the statute which establishes eligibility to collect unemployment benefits. *N.J. S.A.* 43:21–4. As previously noted, subsection 19(u) is contained in the definitions section of the statute and defines average weekly wage. Our disagreements with *Schatz* are twofold. First, we disagree with the court's conclusion:

> In our view the constructional problem arises simply by reason of legislative inadvertence in having failed to amend N.J.S.A. 43:21–19(u) at the time of 1977 amendment of N.J.S.A. 43:21–4(e). [177 *N.J.Super.* at 250]

The 1977 amendment, *L.*1977, *c.* 307, made no pertinent changes in either subsections 4(e) or 19(u). The monetary alternative to the base week minimum in subsection 4(e) was actually added to the statute in 1967 by *L.*1967, *c.* 30. It was subsequently amended by *L.*1974, *c.* 86.

Second, we agree with appellant's argument that in 1974 when both provisions were revised simultaneously the fact that no monetary alternative was added to subsection 19(u), such as had been incorporated in subsection 4(e) in 1967 and increased in 1974, is indicative of a legislative intent to not incorporate a monetary alternative into subsection 19(u). We are persuaded that the simultaneous changes in subsections 4(e) and 19(u) effected by the 1974 amendments, *L.*1974, *c.* 86, coupled with the wholly different purposes of the two provisions, convincingly demonstrate that the failure to include a monetary alternative in subsection 19(u) stems not from any legislative inadvertence, but from deliberate legislative choice. As was observed in *Hancock v. Board of Review,* 46 *N.J.Super.* 418 (App.Div.1957):

> The court's duty is to construe a statute and not to write into it conditions or qualifications. That is a legislative function... We are not unmindful of the fact that the beneficent object of this statute is to minimize loss to workers by unemployment compensation benefits. However, we may not accomplish that desired result by extending the application of the statute to factual situations not covered by its provisions.... [at 421]

Accordingly, the decision of the Board of Review fixing the rate at $95 a week is reversed. The benefit rate of $44 a week as determined by the local office and the Appeals Tribunal is reinstated. This decision shall operate prospectively only, which means that all claims filed before the date of this opinion will not be affected by this decision.