WENDY MORTIMER, CLAIMANT-APPELLANT, v. BOARD OF RE-
VIEW, RESPONDENT-RESPONDENT, AND CUSTOM MEATS
OF NEW JERSEY, INC. AND ANTONOVICH FURS, RESPON-
DENTS.

Submitted March 12, 1985—Decided June 4, 1985.

*Jill S. Slattery* submitted a brief on behalf of appellant.

*Todd A. Wigder*, Deputy Attorney General, submitted a brief on behalf of respondent Board of Review (*Irwin I. Kimmelman*, Attorney General of New Jersey, attorney; *Michael S. Bokar*, Deputy Attorney General, of counsel).

The opinion of the Court was delivered by

STEIN, J.

We granted direct certification, 99 *N.J.* 189, (1984), to resolve the conflict between two Appellate Division decisions that reached different conclusions as to the proper interpretation of the provision of the Unemployment Compensation Law, *N.J. S.A.* 43:21–1 to –24.19, that governs the computation of "average weekly wage" for the purpose of determining a claimant's weekly unemployment benefit rate.

Claimant, Wendy Mortimer, worked for two employers during the statutory base year that preceded the filing of her March 7, 1983 claim for unemployment benefits.[1] She worked 39 weeks part time for Custom Meats of New Jersey, Inc., earning $1,950 from January 10 through November 28, 1982, and 17 weeks from November 14, 1982 to March 6, 1983 as a full-time sales clerk for Antonovich Furs, earning a total of $6,242.30. Her employment with each employer terminated because of lack of work and it is not disputed that claimant is entitled to unemployment benefits. The issue is the amount of benefits to which she is entitled.

Based on these facts the Appeal Tribunal computed claimant's average weekly wage by dividing her total earnings at

---

[1]See *N.J.S.A.* 43:21–19(c). The base year is the 52 calendar weeks ending with the second week immediately preceding claimant's benefit year.

Custom Meats by the number of base weeks during which she had held that job, resulting in an average weekly wage of $50 and unemployment benefits of $34 per week. See *N.J.S.A.* 43:21–3(c) (weekly benefit rate is two thirds of claimant's average weekly wage). The Appeal Tribunal made this calculation in accordance with *N.J.S.A.* 43:21–19(u), which, read literally, requires such calculation to be based on wages earned from the "most recent base year employer with whom [claimant] has established at least 20 base weeks * * *." The decision of the Appeal Tribunal was affirmed by the Board of Review. Claimant contends that since she would have been eligible for unemployment benefits solely on the basis of her employment at Antonovich Furs, her average weekly wage should have been computed on the basis of those earnings, which were substantially higher than her earnings at Custom Meats.

I

A question of statutory construction arises because of a theoretical inconsistency between *N.J.S.A.* 43:21–4(e), which sets forth conditions of eligibility for unemployment benefits, and *N.J.S.A.* 43:21–19(u), which defines average weekly wage for the purpose of computing unemployment benefits. *N.J.S.A.* 43:21–4(e), as it read at the time Mortimer's claim was filed, accorded eligibility to those claimants who had at least 20 weeks of employment during the base year or in the alternative earned at least $2,200 during that year.[2] Section 19(u) required average weekly wage to be determined solely on the basis of the most recent single employment, if any, in which the 20-week test was met, disregarding all other weeks worked during the base year. Section 19(u), however, did not accord the same

2In order to be eligible to collect unemployment benefits, *N.J.S.A.* 43:21–4(e), required that

> With respect to a base year * * * the individual has established at least 20 base weeks as defined in subsection (t) of R.S. 43:21–19, or, in the alternative, has earned $2,200 or more in the individual's base year.

exclusivity to the monetary alternative test, since employees qualifying under that standard could not calculate the average weekly wage on the basis of the most recent employment in which the monetary alternative was satisfied, but were required to include *all* weeks of employment during the base year in calculating their average weekly wage.[3]

The Appeal Tribunal and the Board of Review read *N.J.S.A.* 43:21–19(u) literally. They observed that during the base year claimant had only one employer with whom she had established at least 20 base weeks, and therefore they computed her average weekly wage and weekly unemployment benefits on the basis of her earnings with that employer. Relying on the statutory language, the Appeal Tribunal and the Board of Review disregarded claimant's earnings with Antonovich Furs because claimant had not been employed there for 20 weeks.

Claimant relies on *Schatz v. Board of Review*, 177 *N.J.Super.* 246 (App.Div.1981), to support her claim that her unemployment benefits should be calculated on the basis of her higher earnings with Antonovich Furs. In that case the claimant also had held two jobs during the base year, one as a part-time waitress for 23 weeks at an average weekly salary of $57 and then as a United Airlines employee where she earned a total of $2,230 during 13 weeks at an average weekly wage of about $171. The Appeal Tribunal and the Board of Review calculated benefits on the basis of claimant's employment as a

---

[3]The pre-amendment version of *N.J.S.A.* 43:21–19(u) defined "average weekly wage" as

> the amount derived by dividing an individual's total wages received during his base year base weeks * * * from that most recent base year employer with whom he has established at least 20 base weeks, by the number of base weeks in which such wages were earned. In the event that such claimant had no employer in his base year with whom he had established at least 20 base weeks, then such individual's average weekly wage shall be computed as if all of his base week wages were received from one employer and as if all his base weeks of employment had been performed in the employ of one employer.

waitress, since that was the only job she had held more than 20 weeks. The Appellate Division, however, observed that if claimant Schatz had not held the waitress job at all, she would have been eligible for benefits based solely on her aggregate earnings from United Airlines and her weekly benefit rate would have been computed based on those earnings. The Appellate Division attributed the problem to "legislative inadvertence" in failing to conform the definition of average weekly wage in *N.J.S.A.* 43:21–19(u) with the eligibility requirement of *N.J.S.A.* 43:21–4(e). *Schatz, supra,* 177 *N.J.Super.* at 250. Concluding that "there are no considerations of statutory language, common sense, logic or public policy which would justify permitting so severe a financial penalty to attach to the fact of a prior and lower paid employment during the base year," the court held that the $2,200 eligibility standard could be imported into the definition of average weekly wage. *Id.* Accordingly, the *Schatz* court reversed the Board of Review and held that claimant's benefits should be calculated on the basis of the earnings from the most recent employment from which claimant established eligibility for benefits. *Id.*

The Board of Review followed the holding in *Schatz* until another Appellate Division panel reached a contrary result in *Division of Unemployment & Disability Ins. v. Board of Review,* 188 *N.J.Super.* 71 (1983). There, claimant had three jobs during his base year. His most recent employment was with Eastern Airlines for 16 weeks, during which he earned $2,266 or approximately $142 weekly. Before that he worked 35 weeks for Stern's Department Stores with average weekly earnings of $65.51. Prior to that, he worked 14 weeks with Prudential Insurance Co., earning an aggregate of $1,640. The Board of Review, following *Schatz,* calculated his benefits at a rate of $95 per week ($\frac{2}{3} \times$ $142) on the basis of the Eastern Airlines employment. The Division of Unemployment appealed, arguing that the *Schatz* decision was erroneous because it ignored the clear statutory mandate of *N.J.S.A.* 43:21–19(u). This Appellate Division panel disagreed with the *Schatz* court's

conclusion that the apparent statutory inconsistency was due to "legislative inadvertence." *Division of Unemployment, supra,* 188 *N.J.Super.* at 76. To the contrary, the *Division of Unemployment* court concluded that the difference between the eligibility standard in *N.J.S.A.* 43:21–4(e) and the average weekly wage definition in *N.J.S.A.* 43:21–19(u) was intended by the Legislature:

> [W]e agree with appellant's argument that in 1974 when both provisions were revised simultaneously the fact that no monetary alternative was added to subsection 19(u), such as had been incorporated in subsection 4(e) in 1967 and increased in 1974, is indicative of a legislative intent to not incorporate a monetary alternative into subsection 19(u). We are persuaded that the simultaneous changes in subsections 4(e) and 19(u) effected by the 1974 amendments, *L.*1974, *c.* 86, coupled with the wholly different purposes of the two provisions, convincingly demonstrate that the failure to include a monetary alternative in subsection 19(u) stems not from any legislative inadvertence, but from deliberate legislative choice. [*Id.*]

Accordingly, the court reversed the Board of Review and fixed claimant's benefits on the basis of his earnings at Sterns, the only employer for whom he had worked in excess of 20 weeks.

## II

In determining the proper interpretation of a statute, the basic rule is that the statutory language should be given its ordinary meaning absent specific intent to the contrary. *Levin v. Township of Parsippany-Troy Hills,* 82 *N.J.* 174, 182 (1980); *Abbotts Dairies v. Armstrong,* 14 *N.J.* 319, 325 (1954).

In our view, the plain statutory language evidences a clear legislative intent that the average weekly wage for purposes of unemployment benefits be computed on the basis of the most recent employer with whom claimant has established at least 20 weeks of employment. If there is no such employer, the average weekly wage is to be computed as if all of claimant's wages were received from one employer. The *Schatz* court concluded that it must have been "legislative inadvertence" for the Legislature to have precluded the computation of

average weekly wage on the basis of the most recent employer with which claimant has established eligibility, even if that employment was for less than 20 weeks. 177 *N.J.Super.* at 250. We disagree. The statutory language reflects a legislative choice that as between eligibility based on the minimum statutory earnings and eligibility based on at least 20 weeks of employment, benefits should be calculated on the basis of the more enduring employment. That choice reasonably could reflect the Legislature's belief that employment that lasted at least 20 weeks more accurately represents the level of earnings that the unemployment benefit is intended to replace.

In identifying the legislative intent, we have the benefit of the amendments to the unemployment compensation law enacted by the Legislature in 1984 subsequent to the two Appellate Division decisions that are in conflict. *L.*1984, *c.* 24. The pertinent change in the statute is the addition of two sentences to *N.J.S.A.* 43:21–19(u):

> For the purpose of computing the average weekly wage, the monetary alternative in subsection (e) of R.S. 43:21–4 shall only apply in those instances where the individual did not have at least 20 base weeks in the base year. For benefit years commencing on or after July 1, 1986, "average weekly wage" means the amount derived by dividing an individual's total base year wages by the number of base weeks worked by the individual during the base year; provided, that for the purpose of computing the average weekly wage, the maximum number of base weeks used in the divisor shall be 52.

Pursuant to this amendment, commencing July 1, 1986 the calculation of the average weekly wage will be made by combining all eligible base year wages without making any distinction between employment that lasted more or less than 20 weeks. From October 1, 1984 (the effective date of the amendments) until July 1, 1986, however, the average weekly wage is to be computed on the basis of the "monetary alternative" in *N.J.S.A.* 43:21–4(e), but only in those instances in which claimant did not have at least 20 base weeks of employment. It is unclear if the phrase "monetary alternative" in the amendment was intended to refer to the *Schatz* method of computing average weekly wage for employees who worked fewer than 20 base weeks or

if the phrase contemplated dividing the total wages from all employers by the number of weeks worked.[4]   In either case,

---

[4]There is an apparent ambiguity in the first sentence of the 1984 amendment.  The full text of *N.J.S.A.* 43:21–19(u), as amended by *L.*1984, *c.* 24, is as follows:

"Average weekly wage" means the amount derived by dividing an individual's total wages received during his base year base weeks (as defined in subsection (t) of this section) from that most recent base year employer with whom he has established at least 20 base weeks, by the number of base weeks in which such wages were earned.  In the event that such claimant had no employer in his base year with whom he had established at least 20 base weeks, then such individual's average weekly wage shall be computed as if all of his base week wages were received from one employer and as if all his base weeks of employment had been performed in the employ of one employer.

*For the purpose of computing the average weekly wage, the monetary alternative in subsection (e) of R.S. 43:21–4 shall only apply in those instances where the individual did not have at least 20 base weeks in the base year.  For benefit years commencing on or after July 1, 1986, "average weekly wage" means the amount derived by dividing an individual's total base year wages by the number of base weeks worked by the individual during the base year; provided, that for the purpose of computing the average weekly wage, the maximum number of base weeks used in the divisor shall be 52.*  [Amendment in italics.]

The phrase "monetary alternative" in the first sentence of the amendment is unclear.  Prior to the 1984 amendment, the monetary alternative in *N.J.S.A.* 43:21–4(e) was $2,200.00, but that was an aggregate amount that could be earned from multiple employers.  Commencing October 1, 1984, the monetary alternative under § 4(e) is 12 times the statewide average weekly remuneration paid to workers pursuant to *N.J.S.A.* 43:21–3(c), and is also an amount that can be earned from multiple employers.  Therefore, implementation of the 1984 amendment and computation of the average weekly wage based upon the "monetary alternative" would appear to require that the calculation be made as if all the employee's wages were received from one employer and as if all the employee's base weeks of employment had been performed for one employer.  This is precisely the same calculation that would have been required under *N.J.S.A.* 43:21–19(u) before the amendment.  The ambiguity arises from the fact that the method for calculating average weekly wage pursuant to the first sentence of the 1984 amendment appears to be indistinguishable from the method of calculation required prior to the amendment.

Another explanation for the phrase "monetary alternative" is that it refers to the *Schatz* test, *i.e.*, the wages earned from the last employer with whom claimant established eligibility by virtue of the minimum-earnings test, divided by the number of weeks worked for that employer.  If this was the intended

the amendment does reflect the Legislature's determination that for employees with more than 20 base weeks of employment, their average weekly wage is *not* to be based upon earnings from the last employer from whom the employee earned the monetary alternative set forth in *N.J.S.A.* 43:21–4(e). Accordingly, the rationale of "legislative inadvertence" relied upon in *Schatz*, 177 *N.J.Super.* at 250, is rejected by the 1984 amendments.

To the extent that the legislative will is evident, it is our duty to follow it. *State v. Fearick*, 69 *N.J.* 32, 37 (1975). Accordingly, we disapprove the decision of the Appellate Division in *Schatz* and approve the decision in *Division of Unemployment*. The judgment of the Board of Review is affirmed.

*For affirmance*—CHIEF JUSTICE WILENTZ, and JUSTICES CLIFFORD, HANDLER, POLLOCK, O'HERN, and GARIBALDI and STEIN—7.

*For reversal*—None.

---

meaning, it was not adequately elucidated because the phrase "monetary alternative" does not specifically require the calculation of average weekly wage to be made solely on the basis of earnings from the last employer with whom the monetary alternative was satisfied.

However, what the amendment clearly conveys is a disavowal by the Legislature of the method of calculation approved in *Schatz* with respect to claimants who worked more than 20 base weeks in the base year.