# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4499-16T1

M.M.,

     Plaintiff-Respondent,

v.

M.P.,

     Defendant-Appellant.

_____

Submitted December 19, 2018 – Decided February 21, 2019

Before Judges Ostrer, Currier, and Mayer.

On appeal from Superior Court of New Jersey, Chancery Division, Family Part, Cumberland County, Docket No. FV-06-1097-17.

Helmer, Conley & Kasselman, PA, attorneys for appellant (Patricia B. Quelch, of counsel and on the brief).

Rone & Kowalski, LLC, attorneys for respondent (Amy K.Z. Catlett, on the brief).

PER CURIAM

Defendant M.P. (Marc)[1] appeals from the entry of a final protective order (FPO) issued under the Sexual Assault Survivor Protection Act (SASPA), N.J.S.A. 2C:14-13 to -21. Because we conclude plaintiff M.M. (Melissa) satisfied her burden of demonstrating a predicate act as defined under SASPA, and there was a possibility of future risk to her safety and well-being, we affirm. However, because there is no statutory basis under SASPA for the award of attorney's fees, and we discern no other rule permitting them, we vacate the fee award.

We derive the following facts from the parties' testimony at trial. Marc owned a business that served as a computer network administrator for Melissa's employer. Melissa testified that, at the request of her employer, she brought a computer to Marc for servicing. As Marc and Melissa conversed, Marc offered Melissa a glass of whiskey. Although she took only a little sip, Melissa stated she began to feel "a little lightheaded and a little loopy."

Marc asked Melissa to come over to his desk to show her something on his computer. Melissa backed away after seeing pornographic material displayed on Marc's computer screen. As she did so, Melissa stated Marc approached her, put his hand in her pants, and touched her "private area."

---

[1] We use initials and pseudonyms for the parties' privacy.

A-4499-16T1

Melissa swiped Marc's hand away and turned to grab her bag.  As she turned, Marc put his fingers to his nose, smelled them, and smiled at Melissa, stating: "[Y]ou're not going to leave me with my dick hard."

As Melissa bent down to pick up her bag, she felt Marc grab her from the back, open her pants, and try to put his hand down her pants.  Melissa grabbed her bag, ran out of the building, and drove away.  The next week, Melissa stated Marc called her office "five to ten" times.  Melissa answered the phone once, and Marc asked her if they were "okay" and if "everything" was "okay."

Marc disputed Melissa's account of the events.  He said that he carried the computer from Melissa's car into his office.  As they discussed the computer, Melissa asked him for a drink of whiskey.  Marc told Melissa to help herself, which she did, filling her cup twice.  Melissa discussed "personal issues" with Marc, telling him she preferred older men like him, who was in his sixties, to men her own age.  When Melissa told Marc she needed "somebody to buy her breast augmentation," Marc said he began to gather his belongings, and shut down his computer.

Melissa came behind Marc's desk and stood close to him.  Marc claims there was a Facebook page open on his computer, not pornography.  He denied unbuttoning Melissa's pants, putting his hand down her pants or making "any

3

comments to her about his penis." Marc denied any interaction with Melissa after that date.

Eleven days after the incident, Melissa applied for a temporary protection order (TPO) against Marc under SASPA, alleging sexual contact and attempted sexual contact. On May 18, 2017, following a two-day hearing, a Family Part judge issued an FPO against Marc. During the hearing, Melissa testified the incident left her traumatized, prompting her to seek treatment from a psychologist. She stated she continued to suffer from recurring nightmares, panic attacks, and post-traumatic stress disorder.

In an oral decision, the Family Part judge found Marc's "accusations to not be believable . . . not credible, not something I believe truly happened in regard to this matter." He described Melissa as "often crying," in "continual distress," and exhibiting "anxious behavior" during the hearing, which would be "very difficult for her to fake." The judge found Melissa's testimony to be "far more believable" than that given by Marc.

The judge concluded a predicate act occurred as Marc engaged in "non-consensual contact" with Melissa, touching her private area and buttocks. He further determined an FPO was necessary for two reasons: 1) Melissa testified the incident traumatized her, leading her to seek psychological treatment; and 2)

to protect Melissa because of the "limited economic opportunity" existing in Cumberland County,[2] which creates "a possibility that these two parties would cross and accidentally run into each other somewhere." Thus, the Family Part judge determined Melissa's safety was at risk "because of her concern that she could come across [Marc] in the future."

At the close of the hearing, plaintiff's counsel requested counsel fees and punitive damages.[3] After the submission of an affidavit of services,[4] the trial court issued a written decision and order on August 15, 2017, awarding counsel fees of $2250 and costs of $66.93. The judge analyzed the factors set forth in Rule 5:3-5 to make his determination.

On appeal, Marc argues: 1) the Family Part judge erred in finding non-consensual sexual contact between Marc and Melissa, and that he posed a possibility of future risk to her safety and well-being; 2) N.J.S.A. 2C:14-16(a)(2) is unconstitutionally vague; and 3) the Family Part judge erred in awarding attorney's fees.

---

[2]  Melissa and Marc both reside in Cumberland County.

[3]  The judge declined to consider punitive damages as he determined such damages were "extraordinary relief" not provided for under SASPA.

[4]  Marc did not reply to plaintiff counsel's affidavit.

A-4499-16T1

Our scope of review of Family Part orders is limited. <u>Cesare v. Cesare</u>, 154 N.J. 394, 411 (1998). We owe substantial deference to the Family Part's findings of fact because of its special expertise in family matters. <u>Id.</u> at 413. However, we owe no special deference to the trial judge's "interpretation of the law and the legal consequences that flow from established facts." <u>Manalapan Realty, L.P. v. Twp. Comm. of Manalapan</u>, 140 N.J. 366, 378 (1995).

Prior to the enactment of SASPA in 2016, a victim of sexual violence could only obtain a restraining order under the Prevention of Domestic Violence Act (PDVA), N.J.S.A. 2C:25-17 to -25, unless the victim pursued criminal charges and a restraining order was imposed pursuant to a sentence. The PDVA, however, defines "victim of domestic violence" as a person who satisfies one of several identified domestic relationships, including a spouse, former spouse, a person with whom the defendant had a child in common, or a person with whom the defendant had a dating relationship. N.J.S.A. 2C:25-19(d). This left a person "subjected to sexual violence in a random encounter or in less than a dating relationship" with no recourse to obtain a restraining order. <u>R.L.U. v. J.P.</u>, ___ N.J. Super. ___, ___ (App. Div. 2018) (slip op. at 5). SASPA was intended to fill this gap. <u>Ibid.</u>

Under SASPA,

Any person alleging to be a victim of nonconsensual sexual contact, sexual penetration, or lewdness, or any attempt at such conduct, and who is not eligible for a restraining order as a "victim of domestic violence" as defined by [the PDVA] may . . . file an application with the Superior Court . . . alleging the commission of such conduct or attempted conduct and seeking a temporary protective order.

[N.J.S.A. 2C:14-14(a)(1)].

A Superior Court judge can issue an emergency ex parte temporary protective order "when necessary to protect the safety and well-being of an alleged victim." N.J.S.A. 2C:14-15(a). The trial court may issue an FPO under N.J.S.A. 2C:14-16(a) when a plaintiff demonstrates the allegations made in the TPO by a preponderance of the evidence. The court shall consider, but is not limited, to the following two factors when making its determination:

1) the occurrence of one or more acts of nonconsensual sexual contact, sexual penetration, or lewdness, or any attempt at such conduct, against the alleged victim; and

2) the possibility of future risk to the safety or well-being of the alleged victim.

[N.J.S.A. 2C:14-16(a)].

Marc contends that Melissa did not satisfy either of these factors. We disagree. In considering the first factor, we are satisfied the trial court's finding

7

that Marc engaged in nonconsensual sexual conduct with Melissa was supported with "adequate, substantial, credible evidence." Cesare, 154 N.J. at 412.

Under SASPA, "sexual contact" is "an intentional touching by the . . . actor, either directly or through clothing, of the victim's . . . intimate parts for the purpose of degrading or humiliating the victim or sexually arousing or sexually gratifying the actor." N.J.S.A. 2C:14-14(a)(1). "Intimate parts" means "sexual organs, genital area, anal area, inner thigh, groin, buttock or breast of a person." N.J.S.A. 2C:14-14(a)(1).

The trial judge found Melissa to be credible in her testimony that Marc's hand went into her pants, touching her "private area" and her buttocks. Her testimony satisfies the definition of nonconsensual sexual contact of Melissa's "intimate parts" under N.J.S.A. 2C:14-16(a)(1). Therefore, she established a predicate act.

The second factor to be considered under N.J.S.A. 2C:14-16(a)(2), prior to the entry of an FPO, is whether Marc posed a "possibility" of future risk to Melissa's safety or well-being. Marc asserts that this factor is unconstitutionally vague, contending the words "possibility," "risk," "safety," and "well-being" require a trial court to engage in a "subjective analysis" of the words' meanings and fail to qualify the "risk" to a plaintiff is one created by the defendant.

"[W]henever a challenge is raised to the constitutionality of a statute, there is a strong presumption that the statute is constitutional." State v. Muhammad, 145 N.J. 23, 41 (1996). This presumption requires a reviewing court to analyze a statute assuming "the legislature acted with existing constitutional law in mind and intended the act to function in a constitutional manner." NYT Cable TV v. Homestead at Mansfield, Inc., 111 N.J. 21, 26 (1988) (quoting State v. Profaci, 56 N.J. 346, 349 (1970)).

"A statute or regulation is facially unconstitutional for vagueness if it 'either forbids or requires the doing of an act in terms so vague that [persons] of common intelligence must necessarily guess at its meaning and differ as to its application.'" Karins v. Atl. City, 152 N.J. 532, 541 (1998) (quoting Connally v. Gen. Constr. Co., 269 U.S. 385, 391 (1926)).

In determining whether a statute is vague, "a common sense approach is appropriate in construing the enactment." Chez Sez VIII, Inc. v. Poritz, 297 N.J. Super. 331, 351 (App. Div. 1997) (citing SDJ, Inc. v. City of Houston, 837 F.2d 1286, 1278 (5th Cir. 1988)). The language of the statute "should be given its ordinary meaning absent specific intent to the contrary." Mortimer v. Bd. of Review, 99 N.J. 393, 398 (1985). "When examining statutory language for vagueness, the test is whether a person of average intelligence comprehends the

meaning of the words." Heyert v. Taddese, 431 N.J. Super. 388, 424 (App. Div. 2013) (citing State v. Afanador, 134 N.J. 162, 171 (1993)). Statutory language should also be considered in the context of the whole act, and accorded a common sense meaning that advances the legislative purpose. Voges v. Borough of Tinton Falls, 268 N.J. Super. 279, 285 (App. Div. 1993).

Because the specific words delineated by Marc are not defined under SASPA, we turn to their use in the statutory context and their ordinary meaning to ascertain the Legislature's intent.

"Risk" is defined as "possibility of loss or injury" or "someone or something that creates or suggests a hazard." Risk, Merriam-Webster, https://www.merriam-webster.com/dictionary/risk (last accessed Feb. 6, 2019). N.J.S.A. 2C:14-16(a)(1) requires a plaintiff to prove by a preponderance of the evidence a defendant perpetrated "one or more acts of nonconsensual sexual contact, sexual penetration, or lewdness, or any attempt at such conduct against the alleged victim." Using the statutory context, a person of average intelligence could comprehend a future "risk" to mean a defendant engaging again in nonconsensual sexual conduct or attempting such conduct against the plaintiff. Thus, the second definition of risk, "something or someone that creates or

suggests a hazard," is the proper meaning of "risk" in the context of N.J.S.A. 2C:14-16(a)(2).

As for "safety"[5] and "well-being,"[6] a person of reasonable intelligence can comprehend the ordinary meaning of those words as requiring a finding that a victim would not be safe or "happy, healthy, or prosperous," if he or she was subjected to sexual violence from the defendant. Similarly, the ordinary meaning of "possibility,"[7] "a chance that something might exist, happen, or be true," is also comprehensible to a person of average intelligence. Because the words employed in N.J.S.A. 2C:14-16(a)(2) are comprehensible using statutory context and ordinary meaning, the statute is not unconstitutionally vague.

In his analysis of the second factor, the judge considered Melissa's trauma from the incident, and the "limited economic opportunity" in Cumberland

[5] "Safety" is defined as "the condition of being safe from undergoing or causing hurt, injury, or loss." Safety, Merriam-Webster, https://www.merriam-webster.com/dictionary/safety (last accessed Feb. 6, 2019).

[6] "Well-being" is defined as "the state of being happy, healthy, or prosperous." Well-being, Merriam-Webster, https://www.merriam-webster.com/dictionary/well-being (last accessed Feb. 6, 2019).

[7] "Possibility" is defined as "the condition or fact of being possible." Possibility, Merriam-Webster, https://www.merriam-webster.com/dictionary/possibility (last accessed Feb. 6, 2019).

County that could lead to interaction between Melissa and Marc. He determined an FPO was necessary as "there [was] a risk to the safety [and well-being] of [Melissa] because of her concern that she could come across [Marc] in the future."

Under the totality of the circumstances present here, and the deference we accord to the Family Part judge's credibility assessment of the parties and witnesses, as well as his fact findings, we affirm the entry of a FPO because we are satisfied the trial court applied the plain meaning of the statute.

Marc also asserts the trial judge abused his discretion in awarding attorney's fees. Because we conclude there is no statutory provision for an award of counsel fees under SASPA, we are constrained to vacate the counsel fee award.

The PDVA provides for an award of attorney fees as an element of compensatory damages. N.J.S.A. 2C:25-29(b)(4). Because fees are specifically permitted under the PDVA statute, they are an enumerated exception under Rule 4:42-9(a)(8). As a result, an award of fees under the PDVA is not subject to the considerations that apply to an award of counsel fees in a matrimonial action. See Wine v. Quezada, 379 N.J. Super. 287, 293 (Ch. Div. 2005); see also R. 5:5-3.

A-4499-16T1

In contrast, SASPA does not provide for an award of attorney's fees. Although the Family Part judge granted counsel fees under Rule 5:3-5, we cannot discern any authority in the rule for such an award. Rule 5:3-5(c) permits an award of attorney's fees for "claims relating to family type matters."[8] SASPA was specifically implemented to expand remedies for victims of sexual violence, who were ineligible for a restraining order because they lacked any familial or dating relationship. As SASPA specifically eliminates any familial relationship between the parties, we cannot see any authority within the Family Part rules to permit an award of counsel fees in a SASPA action.[9] Furthermore, SASPA does

---

[8] Rule 5:3-5 provides in pertinent part:

> Subject to the provisions of R. 4:42-9(b), (c), and (d), the court in its discretion may make an allowance, both pendente lite and on final determination, to be paid by any party to the action, including, if deemed to be just, any party successful in the action, on any claim for divorce, dissolution of civil union, termination of domestic partnership, nullity, support, alimony, custody, parenting time, equitable distribution, separate maintenance, enforcement of agreements between spouses, domestic partners, or civil union partners and claims relating to family type matters.

[9] Following the enactment of SASPA, the judiciary issued procedures for the implementation of SASPA. It designated all TPO applications to be filed in the Family Division of the Superior Court during normal court hours. Contempt proceedings regarding the violation of a protective order are also conducted by

A-4499-16T1

not fall within any of the enumerated actions under <u>Rule</u> 4:42-9 to permit the award of attorney's fees.

Affirmed in part, vacated in part.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

a Family Part judge. We do not think the lodging of SASPA proceedings in the Family Division suffices to render them "family matters" for the purposes of a fee award under <u>Rule</u> 5:3-5.

A-4499-16T1