**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0689-24

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

DAYANA ABREAU, a/k/a
DAYANA ABREU,

    Defendant-Appellant.

_____

Argued June 5, 2025 – Decided June 19, 2025

Before Judges Mawla, Natali, and Vinci.

On appeal from an interlocutory order of the Superior Court of New Jersey, Law Division, Hunterdon County, Complaint No. S-2024-0163-1021.

Damiano M. Fracasso argued the cause for appellant.

Joseph Paravecchia, First Assistant Prosecutor, argued the cause for respondent (Renée M. Robeson, Hunterdon County Prosecutor, attorney; Joseph Paravecchia, of counsel and on the brief).

PER CURIAM

By leave granted, defendant Dayana Abreau appeals from a September 25, 2024 order denying her motion to dismiss a complaint-summons charging her with third-degree animal cruelty, N.J.S.A. 4:22-17(c)(3), and third-degree animal fighting, N.J.S.A. 4:22-24(a)(2).[1] After careful review of the record and governing legal principles, we affirm.

In the charging document, Raritan Township Police Department Detective William McEnroe alleged:

> On [May 11, 2024], this agency responded to 30 Hardscrabble Hill Road for a noise complaint. The investigation revealed an illegal cock[]fighting operation. Def[endant] was observed on scene via body camera review compared against driver's license photograph and was driving NJ registration Y[****]X registered to her. Additionally, def[endant] appeared in [a] geo fence present at the crime scene during the known period of time that the animal fighting was taking place.

Defendant filed a motion to dismiss "the State's complaint in its entirety . . . with prejudice." She maintained both N.J.S.A. 4:22-17(c)(3) and 4:22-24(a)(2) were unconstitutionally vague.

---

[1] The complaint-summons incorrectly lists one of the "[o]riginal [c]harge[s]" as N.J.S.A. 4:22-24(b) instead of N.J.S.A. 4:22-24(a)(2). It is clear, however, based upon the narrative in the complaint-summons, defendant was charged under N.J.S.A. 4:22-24(a)(2).

With respect to N.J.S.A. 4:22-24(a)(2), defendant argued it did "not prohibit any specific conduct," and "arguably criminalize[d] any act of being 'present and witness[ing]' anything . . . , 'pay[ing] admission' to anything . . . , or 'encourag[ing] or assist[ing]' someone in doing anything." (All but fourth alteration in original). She further contended the statute did "not prohibit 'animal fighting' (an element of the offense not specifically defined anywhere in this [l]egislation or in N.J.S.A. 2C:1-1, et seq.)[,] nor [did] it define what constitutes 'a cock[]fighting operation' or how or why a 'cock[]fighting operation' . . . constitutes 'animal fighting . . . .'" Additionally, defendant asserted the statute was unconstitutional because "it [did] not contain any specific mens rea or level of scienter."

As to N.J.S.A. 4:22-17(c)(3), defendant maintained "the fact that N.J.S.A. 4:22-17(c)(3) contains three . . . levels of scienter for the same exact conduct render[ed] it unconstitutionally void for vagueness." She also argued the statute was invalid or unconstitutional under N.J.S.A. 2C:2-1 because it "prohibit[ed] conduct through 'indirect means.'" Finally, defendant contended "the terms '[t]orment, torture, maim, hang, poison, unnecessarily or cruelly beat, cruelly abuse, or needlessly mutilate a living animal or creature' [were] blatantly void for vagueness and/or overbreadth."

A-0689-24

After considering the parties' written submissions and oral arguments, the court denied defendant's motion and explained its reasoning in a written decision. With respect to defendant's argument concerning the undefined terms in N.J.S.A. 4:22-17(c), the court found the dictionary "provide[d] definitions of the ordinary meaning of all terms sufficient, that when applied to the language of the statute, would give a reader of ordinary intelligence a clear idea of what conduct is prohibited." The court found "defendant should have known participating in cock[]fighting would result in the serious injury of the roosters," and give rise to liability under N.J.S.A. 4:22-17(c)(3). The court further rejected defendant's argument concerning the three levels of culpability referenced in the statute, noting "[s]imply because there are three different levels of scienter, does not mean that the statute is confusing for the public."

As to defendant's arguments concerning the constitutionality of N.J.S.A. 4:22-24, the court first found defendant's contention that the statute "criminalizes every act of 'being present and witness[ing]'" to be without merit. (Alteration in original). Specifically, the court concluded the statute's use of the word "therein," which "means to be present and witness the baiting or otherwise facilitating the fighting of a living animal or creature," rendered it sufficiently clear.

4 <span>A-0689-24</span>

It further found defendant's argument that the statute lacked a scienter requirement "not only without merit, but also wholly incorrect."  Relying upon State v. Demarest, 252 N.J. Super. 323, 327 (App. Div. 1991), for the proposition that "N.J.S.A. 2C:2-2[(c)](3) and . . . N.J.S.A. 2C:2-2[(b)](2) establish 'knowingly' as the required state of mind if an offense is defined without a specified culpability requirement," the court concluded the statute was sufficiently clear, enabling defendant to understand what conduct was prohibited.

On appeal, defendant contends both N.J.S.A. 4:22-24(a)(2) and N.J.S.A. 4:22-17(c)(3) are impermissibly vague and overbroad, and the court's decision should be reversed because it "rewrote the statutes on an ex post facto basis and used a dictionary of its own choosing to save . . . both of the statutes from being declared unconstitutional."  Relying upon the Supreme Court's decision in United States v. Stevens, 559 U.S. 460, 464 (2010), where the Court concluded the federal Depiction of Animal Cruelty statute was unconstitutionally overbroad, defendant maintains in revising that statute after the Court's decision, "Congress did not rely on ephemeral internet dictionary definitions of words to criminalize conduct (as opposed to leaving the reader guessing and adding words that aren't there or even part of the legislation) and it makes appropriate

A-0689-24

exceptions to narrowly tailor the statute to constitutionally permissible parameters."

With respect to N.J.S.A. 4:22-17(c)(3), defendant argues it criminalizes lawful activities "such as fishing, using a mousetrap, using flypaper or a flyswatter, spraying insecticide, stepping on a cockroach, declawing a cat, cropping a dog's ears or tail, horseracing[,] cooking a live lobster or crab in boiling water, steaming clams or mussels[,] or fumigating termites." Further, defendant contends because the statute does not differentiate between a living animal and a living creature, "[a]pplication of th[e] statute as written can lead to arbitrary and [capricious] prosecutions instigated by disgruntled family members, co-workers, neighbors, customers, business proprietors, voters, lottery ticket purchasers[,] and other members of society who experience 'anguish' over anything at all."

As to N.J.S.A. 4:22-24(a)(2), defendant asserts the State improperly inserted "the word 'or' after the semicolon between [subsections (a)(1) and (a)(2)]" in its brief before the court. She maintains "[t]he State added the word 'or' where it did [as] a tacit admission that, without it being there, the statute is unconstitutionally vague and overbroad to say the least." As written, defendant argues N.J.S.A. 4:22-24(a)(2) "criminalizes being 'present and witness[ing]' or

6

'pay[ing] admission to' or 'encourag[ing]' or 'assist[ing]' in anything." (All but third alteration in original).

"Generally, an appellate court uses an abuse-of-discretion standard to review a ruling on a motion to dismiss a criminal charge." State v. Rosado, 475 N.J. Super. 266, 273 (App. Div. 2023) (citing State v. Twiggs, 233 N.J. 513, 532 (2018)). "A trial judge's legal interpretations, however, are subject to de novo review." State v. Keogh, 481 N.J. Super. 67, 77 (App. Div. 2025) (citing State v. Grate, 220 N.J. 317, 329 (2015)). Further, we "conduct a de novo review when a decision on a motion to dismiss a[ complaint] 'was based on the court's interpretation of the statutes pursuant to which [the] defendant was charged.'" Ibid. (second alteration in original) (quoting State v. Bernardi, 456 N.J. Super. 176, 186 (App. Div. 2018)).

The Prevention of Cruelty to Animals Act (Act), N.J.S.A. 4:22-11.11 to -61, "includes two distinct statutory schemes, differentiating criminal prosecutions from civil actions." In re P.H., 436 N.J. Super. 427, 438 (App. Div. 2014). As used in the Act, "'[a]nimal' or 'creature' includes the whole brute creation." N.J.S.A. 4:22-15. One of the Act's criminal provisions, N.J.S.A. 4:22-17(c), provides, in relevant part:

c. It shall be unlawful to purposely, knowingly, or recklessly:

> (1) Torment, torture, maim, hang, poison, unnecessarily or cruelly beat, cruelly abuse, or needlessly mutilate a living animal or creature;

> (2) Cause bodily injury to a living animal or creature by failing to provide the living animal or creature with necessary care, whether as the owner or as a person otherwise charged with the care of the living animal or creature;

> (3) Cause or procure an act described in paragraph (1) or (2) of this subsection to be done, by any direct or indirect means, including but not limited to through the use of another living animal or creature . . . .

N.J.S.A. 4:22-24(a)(1) and (2) provide:

a. A person who shall:

> (1) Keep, use, be connected with or interested in the management of, or receive money for the admission of a person to, a place kept or used for the purpose of fighting or baiting a living animal or creature;

> (2) Be present and witness, pay admission to, encourage or assist therein;

> . . . .

Shall be guilty of a crime of the third degree.

Our courts presume statutes are constitutionally valid. State v. Buckner, 223 N.J. 1, 14 (2015). A statute will not be declared unconstitutional "unless its repugnancy to the Constitution is clear beyond a reasonable doubt." State v. Smith, 251 N.J. 244, 263 (2022) (quoting State v. Lenihan, 219 N.J. 251, 266 (2014)). The party challenging the validity of the statute bears this "heavy burden" of proof. Buckner, 223 N.J. at 14 (quoting State v. Trump Hotels & Casino Resorts, Inc., 160 N.J. 505, 526 (1999)).

"A statute 'is void if it is so vague that persons of common intelligence must necessarily guess at its meaning and differ as to its application.'" Lenihan, 219 N.J. at 267 (quoting Hamilton Amusement Ctr. v. Verniero, 156 N.J. 254, 279-80 (1998)). The constitutional flaw with a vague statute is that it may deny due process by failing to provide fair notice of the prohibited conduct. Ibid. Statutes can also be unconstitutionally vague if they authorize or allow arbitrary and selective enforcement. Hill v. Colorado, 530 U.S. 703, 732 (2000). An offense must be defined "with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." Kolender v. Lawson, 461 U.S. 352, 357 (1983) (citing Hoffman Ests. v. Flipside, Hoffman Ests., Inc., 455 U.S. 489, 494 (1982)).

A statute can be challenged as being either facially vague or vague as applied. Lenihan, 219 N.J. at 267. "A law is facially vague if it is vague in all applications." Ibid. (citing State v. Maldonado, 137 N.J. 536, 563 (1994)). Accordingly, a facial challenge is particularly difficult to present and establish. United States v. Salerno, 481 U.S. 739, 745 (1987).

"A statute that 'is challenged as vague as applied must lack sufficient clarity respecting the conduct against which it is sought to be enforced.'" Lenihan, 219 N.J. at 267 (quoting Visiting Homemaker Serv. of Hudson Cnty. v. Bd. of Chosen Freeholders of Cnty. of Hudson, 380 N.J. Super. 596, 612 (App. Div. 2005)). If the statute "is not vague as applied to a particular party, it may be enforced even though it might be too vague as applied to others." Ibid. (quoting State v. Cameron, 100 N.J. 586, 593 (1985)).

In determining whether a statute is vague, "a common[-]sense approach is appropriate in construing the enactment." Chez Sez VIII, Inc. v. Poritz, 297 N.J. Super. 331, 351 (App. Div. 1997) (citing SDJ, Inc. v. City of Houston, 837 F.2d 1286, 1278 (5th Cir. 1988)). The language of the statute "should be given its ordinary meaning absent specific intent to the contrary." Mortimer v. Bd. of Rev., 99 N.J. 393, 398 (1985) (citing Levin v. Twp. of Parsippany-Troy Hills, 82 N.J. 174, 182 (1980)). "When examining statutory language for vagueness,

the test is whether a person of average intelligence comprehends the meaning of the words." Heyert v. Taddese, 431 N.J. Super. 388, 424 (App. Div. 2013) (citing State v. Afanador, 134 N.J. 162, 171 (1993)). Statutory language should also be considered in the context of the whole act and accorded a common sense meaning that advances the legislative purpose. Voges v. Borough of Tinton Falls, 268 N.J. Super. 279, 285 (App. Div. 1993).

"If the text of a statute is not clear on its face, courts may look to extrinsic aids to interpret it, including but not limited to the enactment's legislative history and the policies underlying it." Breitman v. Atlantis Yacht Club, 477 N.J. Super. 115, 121 (App. Div. 2023) (citing State v. Harper, 229 N.J. 228, 237 (2017)). "Such extrinsic aids may also include definitions of the same words that appear in other statutes or legal authorities, or dictionaries." Ibid. (citing Malanga v. Twp. of W. Orange, 253 N.J. 291, 315-16 (2023)).

Overbroad statutes, by contrast, "suffer from a different flaw. They invite 'excessive governmental intrusion into protected areas' by 'extend[ing] too far.'" State v. Carter, 247 N.J. 488, 518 (alteration in original) (quoting Karins v. Atlantic City, 152 N.J. 532, 544 (1998)). A law may be held facially overbroad "[i]f the challenger demonstrates that the statute 'prohibits a substantial amount of protected speech' relative to its 'plainly legitimate sweep.'" State v.

Higginbotham, 257 N.J. 260, 277-78 (2024) (alteration in original) (quoting United States v. Hansen, 599 U.S. 762, 770 (2023)).

Based upon our review of the record and the aforementioned legal principles, we conclude the court appropriately denied defendant's motion to dismiss the complaint-summons because neither N.J.S.A. 4:22-17(c)(3) nor N.J.S.A. 4:22-24(a)(2) is void for vagueness or overbreadth, and we affirm substantially for the reasons expressed in the court's thorough September 25, 2024 written decision. We add the following comments to amplify our decision.

With respect to N.J.S.A. 4:22-17(c)(3), here, defendant was charged with "purposely, knowingly, or recklessly" tormenting and cruelly abusing a living animal or creature through indirect means by "being present at a cock[]fighting operation . . . where roosters were tormented and cruelly abused." Although N.J.S.A. 4:22-17(c) does not define certain words such as "[t]orment, torture, maim, hang, poison, unnecessarily or cruelly beat, cruelly abuse, or needlessly mutilate," there is no reasonable basis for defendant to contend that a person of average intelligence would not understand what those terms mean. Indeed, "[c]ertain words can be understood by 'a person of average intelligence' and 'would not send the average citizen scrambling for a dictionary.'" State v. N.I., 349 N.J. Super. 299, 308-09 (App. Div. 2002) (quoting Afanador, 134 N.J. at

171).  As such, "[w]ords 'used by ordinary citizens in everyday conversation' need not be defined."  Id. at 309 (quoting Afanador, 134 N.J. at 175).  N.J.S.A. 4:22-17(c)(3) is clearly not void for vagueness on account of these undefined terms.

Further, defendant's arguments the statute criminalizes everyday lawful activities and can lead to arbitrary and capricious enforcement because it does not differentiate between living animals and creatures are similarly without merit.  First, the statute does not criminalize everyday lawful activities as N.J.S.A. 4:22-16 provides a number of exceptions limiting the statute's reach and belying any claim of overbreadth.  See N.J.S.A. 4:22-16 (explaining nothing in the Act "shall be construed to prohibit or interfere with" lawful acts, such as scientific experiments conducted under the authority of the Department of Health or the United States Department of Agriculture; "[t]he killing or disposing of an animal or creature by virtue of the order of a constituted authority of the State"; or lawful hunting activities).  Second, N.J.S.A. 4:22-15 does define what a living animal or creature is for purposes of the Act.

We are similarly unpersuaded by defendant's argument N.J.S.A. 4:22-17(c)(3) is void for vagueness because it contains three levels of scienter.  It is not unusual for the Legislature to define a crime by including multiple levels of

13                                                          A-0689-24

culpability. See, e.g., N.J.S.A. 2C:35-5(a) ("[I]t shall be unlawful for any person knowingly or purposely . . . [t]o manufacture, distribute or dispense, or to possess . . . a controlled dangerous substance or controlled substance analog") (emphasis added); N.J.S.A. 2C:12-1(a)(1) (explaining a person commits simple assault if they "[a]ttempt[] to cause or purposely, knowingly[,] or recklessly causes bodily injury to another") (emphasis added). Simply because the Legislature chose to define N.J.S.A. 4:22-17(c)(3) by including three levels of scienter does not, as the court here properly concluded, "mean that the statute is confusing for the public." Nor does it "lack sufficient clarity respecting the conduct against which it is sought to be enforced." Lenihan, 219 N.J. at 267 (quoting Visiting Homemaker Serv. of Hudson Cnty., 380 N.J. Super. at 612).

With respect to N.J.S.A. 4:22-24(a)(2), defendant was charged with being present and witness to, paying admission to, and encouraging or assisting animal fighting, "specifically by . . . being present for a cock[]fighting operation." As noted, N.J.S.A. 4:22-24(a) provides, in relevant part:

> a. A person who shall:
>
> > (1) Keep, use, be connected with or interested in the management of, or receive money for the admission of a person to, a place kept or used for the purpose of fighting or baiting a living animal or creature;

 A-0689-24

> (2) Be present and witness, pay admission to, encourage or assist therein;
>
> . . . .

Shall be guilty of a crime of the third degree.

The Legislature's use of the word "therein" in subsection (a)(2) clearly indicates an individual shall be guilty of a third-degree offense when they are present and witness, pay admission to, and encourage or assist "a place kept or used for the purpose of fighting or baiting a living animal or creature." See Webster's II New College Dictionary 1172 (3d ed. 2005) (defining "therein" as "[i]n that circumstance or respect"). Thus, N.J.S.A. 4:22-24(a)(2) is not void for vagueness because a person of average intelligence would understand it prohibits being present and witnessing, paying admission to, and encouraging or assisting animal fighting or baiting. Accordingly, defendant's contention the statute is unconstitutionally overbroad because it "criminalizes being 'present and witness[ing]' or 'pay[ing] admission to' or 'encourag[ing]' in anything," is unavailing. (All but third alteration in original).

As to defendant's argument the statute is void for vagueness because it "is a strict liability offense," it is well-established that unless strict liability is clearly intended, a statute setting forth a crime without specifying the mens rea requirement should be construed as requiring a "knowing" state of mind. See

15

N.J.S.A. 2C:2-2(c)(3) ("A statute defining a crime, unless clearly indicating a legislative intent to impose strict liability, should be construed as defining a crime with the culpability defined in paragraph b.(2) of this section. This provision applies to offenses defined both within and outside of this [C]ode."); see, e.g., State v. Rovito, 99 N.J. 581, 586 (1985) (noting with respect to an offense that has no "specified requirement of culpability," "knowingly" is the standard of culpability that is applied under the gap-filler provision of the Code). Because the required mental state for N.J.S.A. 4:22-24(a)(2) is "knowingly," the statute is not void for vagueness on account of its lack of a specific standard of culpability.

Defendant's remaining arguments are similarly unpersuasive. With respect to her reliance on Stevens, that case is distinguishable as it involved a challenge to the federal Depiction of Animal Cruelty statute. 559 U.S. at 464. The federal statute did not criminalize underlying acts of animal abuse, but rather, "establishe[d] a criminal penalty of up to five years in prison for anyone who knowingly 'create[d], [sold], or possesse[d] a depiction of animal cruelty,' if done 'for commercial gain' in interstate or foreign commerce." Id. at 464-65. The Stevens Court concluded the federal statute was unconstitutionally overbroad, in part, because "the presumptively impermissible applications of

16

[the federal statute] (properly construed) far outnumber[ed] any permissible ones." Id. at 481.

Here, unlike the federal statute at issue in Stevens, N.J.S.A. 4:22-17 and N.J.S.A. 4:22-24 criminalize acts of animal cruelty and fighting, not depictions sold for commercial gain. Additionally, as noted, both statutes are suitably limited such that they do not present the same potential for overbroad application as the federal statute in Stevens.

As to defendant's contention the court erroneously "used a dictionary of its own choosing to save . . . both of the statutes from being declared unconstitutional," we similarly find that argument to be without merit. It is well-established in dealing with issues of statutory interpretation courts may address any ambiguities by consulting extrinsic aids, including dictionaries. See Breitman, 477 N.J. Super. at 121.

Finally, we are compelled to address an issue defendant's counsel raised at oral argument. Specifically, defendant's counsel argued the animal fighting charge under N.J.S.A. 4:22-24(a)(2) should be dismissed because the complaint-summons does not allege facts necessary to establish all of the crime's elements. That is, the complaint-summons only alleges defendant violated the statute by "being present for a cock[]fighting operation," rather than alleging she was

17

present and witness to, paid admission to, and encouraged or assisted the cockfighting operation. See N.J.S.A. 4:22-24(a)(2).

We granted defendant's application for leave to appeal solely to address her contention N.J.S.A. 4:22-17(c)(3) and 4:22-24(a)(2) are unconstitutionally overbroad and vague, either facially or as applied. It does not appear defendant raised the aforementioned argument before the court or in her motion for leave to appeal. It is therefore not properly before us. See State v. Lawless, 214 N.J. 594, 605 n.2 (2013). Second, defendant's contention concerning the sufficiency of the factual allegations contained in the complaint-summons does not relate to her facial and as applied challenges.

Defendant may file with the court a motion to dismiss the complaint-summons based upon these grounds, we note, however, "R[ule] 3:3-4 provides extraordinarily broad authority to amend a [complaint-]summons or [complaint-]warrant." State v. Egles, 308 N.J. Super. 124, 130 (App. Div. 1998); see also R. 3:3-4(a) ("No person arrested under a warrant or appearing in response to a summons shall be discharged from custody or dismissed because of any technical insufficiency or irregularity in the warrant or summons, but the warrant or summons may be amended to remedy any such technical defect.").

To the extent we have not addressed specifically any of defendant's remaining arguments, it is because we have concluded that they are without sufficient merit to warrant discussion in a written opinion.  <u>R.</u> 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

*M.C. Harley*

Clerk of the Appellate Division

19